[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15194

_____

D.C. Docket Nos. 1:16-cv-23426-DMM; 1:07-cr-20155-DMM-3

CARLOS GRANDA,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 11, 2021)

Before WILLIAM PRYOR, Chief Judge, JORDAN and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This is Carlos Granda's second trip to our Court. In this reverse sting case, Granda served as the lookout for a criminal crew that attempted to rob a tractor trailer purportedly filled with sixty to eighty kilograms of cocaine. The scheme

netted him several serious criminal convictions. On direct appeal, we affirmed his convictions and sentence. Now, Granda appeals the denial of his § 2255 petition. He collaterally attacks his conviction for conspiracy to possess a firearm in furtherance of a crime of violence or drug-trafficking crime in violation of 18 U.S.C. § 924(o). The trial court instructed the jury that to convict on this charge, it could rely on any of several predicate crimes: conspiracy to possess cocaine with intent to distribute; attempt to possess cocaine with intent to distribute; attempted Hobbs Act robbery; conspiracy to commit Hobbs Act robbery; and attempted carjacking. The jury found Granda guilty of each of these crimes, which were independently charged in Granda's indictment.

Granda's claim turns entirely on the observation that one of these offenses -- conspiracy to commit Hobbs Act robbery -- no longer qualifies as a valid crime-of-violence predicate after United States v. Davis, 139 S. Ct. 2319, 2336 (2019) and Brown v. United States, 942 F.3d 1069, 1075 (11th Cir. 2019). Granda reasons that the indictment, jury instructions, and general verdict make it impossible to tell for sure whether the jury relied on this invalid predicate or on one or more of the undeniably valid predicates to convict him of violating § 924(o). Granda says we must vacate his conviction because of the possibility that the jury relied on an invalid predicate and, therefore, convicted him of a non-existent crime.

2

Granda faces two insuperable problems: he cannot overcome the procedural default of his claim (which he raises for the first time on collateral attack), nor could he otherwise prevail on the merits. Among the shortcomings that defeat his claim is a fundamental one that cuts across both the procedural and merits inquiries: all of the § 924(o) predicates are inextricably intertwined, arising out of the same cocaine robbery scheme. On this record, the jury could not have found that Granda conspired to possess a firearm in furtherance of a Hobbs Act conspiracy without also finding that he conspired to possess a firearm in furtherance of his attempted Hobbs Act robbery, as well as in furtherance of conspiring and attempting to possess cocaine with intent to distribute and in furtherance of attempting a carjacking. Each of these crimes remains a lawful predicate for the § 924(o) conviction. Thus, Granda cannot show actual prejudice or actual innocence to excuse his procedural default. Moreover, the overlapping factual relationship between the alternative predicate offenses renders any error in the jury instructions harmless.

Accordingly, we affirm.

## I.

### A.

In 2007, Carlos Granda's ("Granda") brother Paulino told a confidential informant ("CI") that he was putting together a criminal crew and looking for

work. On January 26, 2007, the CI introduced Paulino to a detective who was working in an undercover capacity. The undercover agent claimed to be a disgruntled drug trafficker who wanted to rob his boss; and he knew where in Miami his boss kept a tractor-trailer full of some sixty to eighty kilograms of cocaine. Paulino orchestrated a plan to rob the tractor-trailer at gunpoint. He and his crew planned to approach the truck while armed and dressed as a police S.W.A.T. team, remove and detain the drivers, and steal the truck and the drugs. Paulino explained that he would secure the perimeter by having his associates do surveillance. He added that, if it became necessary, he and his crew were willing to shoot the driver and anyone else who resisted. Appellant Granda's role was to serve as a lookout. Paulino also asked him to bring a gun to the robbery.

Granda and the crew met up at his parents' apartment, where members of the crew packed up guns, as well as construction ties to use as handcuffs. The crew then drove to a warehouse where they expected to find the stash truck. Granda stationed himself in his car near the entrance to the warehouse. Just as a member of the crew approached the truck, police officers revealed themselves and initiated a takedown. One of the would-be robbers raised his revolver, triggering a shootout. In the ensuing minutes, the police killed two members of the crew and wounded two others. Granda attempted to flee in his car but encountered a police blockade. He tried to evade the blockade by turning in front of a police car,

4

striking it. The police arrested Granda, and found handcuffs, but not a firearm, in his car. They did find a loaded Hi-Point 9mm semi-automatic pistol in Paulino's car.

B.

A grand jury sitting in the Southern District of Florida returned a superseding indictment against Carlos Granda and his co-defendants. Granda was charged with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count 1); attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count 2); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 3); attempted Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 4); attempted carjacking, in violation of 18 U.S.C. § 2119 (Count 5); conspiracy to use and carry a firearm during and in relation to, and to possess a firearm in furtherance of, a crime of violence and drug-trafficking crime, in violation of 18 U.S.C. § 924(o) (Count 6); and possession of a firearm in furtherance of a crime of violence or drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 7). The indictment listed each of the offenses charged in Counts 1, 2, 3, 4, and 5 as predicate crime-of-violence or drug-trafficking offenses for the § 924(o) offense charged in Count 6.

5

At trial, Granda's counsel insisted that Granda lacked the requisite criminal intent because he thought Paulino was working as a government informant the whole time.  Granda also offered the theory that the government failed to establish that he knew the object of the robbery was to obtain cocaine.  Plainly unconvinced, the jury returned a general verdict convicting Granda of Counts 1–6 (but acquitting him of Count 7).  The district court then sentenced Granda to concurrent prison terms of 360 months as to Counts 1 and 2, 180 months as to Count 5, and 240 months as to Counts 3, 4, and 6.  The sentence also included a five-year term of supervised release and a $100 special assessment on each count.  We upheld Granda's convictions and sentence on direct appeal.  United States v. Granda, 346 F. App'x 524, 529 (11th Cir. 2009).

Granda filed several unsuccessful collateral attacks, including an earlier § 2255 petition and a petition for a writ of audita querela.  He did, however, successfully move the district court for a sentence reduction pursuant to section 3582 of Title 18.  The trial court reduced his sentence to 324 months in prison, consisting of concurrent terms of 324 months on counts 1 and 2 to run concurrently with the terms for the other counts.

Proceeding pro se, Granda then sought leave to file the instant § 2255 petition; we granted leave to file this second or successive petition in August 2016.  He claimed that his § 924(o) conviction had to be vacated because the supporting

predicate may have been a crime that qualified as a crime-of-violence predicate only under § 924(c)'s residual clause. In other words, the jury may have used Count 3 -- the conspiracy to commit Hobbs Act robbery -- as the supporting predicate. See 18 U.S.C. § 924(c)(3)(B) (defining "crime of violence" in part as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). Granda argued that § 924(c)'s residual clause was unconstitutionally vague under the reasoning of Johnson v. United States, 576 U.S. 591, 597 (2015), which had invalidated a similar residual clause found in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii). Since the general verdict left open the possibility that the jury had relied on an invalid predicate to convict him of the § 924(o) offense, this conviction must be set aside. The government responded that Granda had procedurally defaulted his claim because he did not raise it on direct appeal, and that, in any event, Johnson did not invalidate the § 924(c) residual clause.

A magistrate judge issued a Report and Recommendation concluding that Granda could not establish actual prejudice to overcome procedural default, and that, while the conspiracy to commit Hobbs Act robbery (Count 3) did not independently support Granda's § 924(o) conviction, his drug-trafficking, attempted Hobbs Act robbery, and attempted carjacking crimes were valid

7

predicates that did so. The district court partially adopted the Report and Recommendation, holding based on then-applicable Eleventh Circuit case law that Johnson did not extend to the § 924(c) residual clause. Moreover, even if Johnson did apply, the district court reasoned that Granda "failed to meet his burden of proving entitlement to relief under" Johnson pursuant to this Court's holding in Beeman v. United States, 871 F.3d 1215, 1221–22 (11th Cir. 2017). He could not "show that it was more likely than not that at least one juror relied on conspiracy to commit Hobbs Act robbery (Count 3) in voting to convict [him] on Count 6 [the § 924(o) conviction]." Still, the district court granted a certificate of appealability on two issues: "whether [Johnson] applies to § 924(o) and if so, whether [Granda] met his burden of showing entitlement to relief under" Johnson.

Proceeding pro se, Granda filed this appeal, and a full round of briefing ensued. Then the Supreme Court decided Davis, 139 S. Ct. at 2336, concluding that the § 924(c) residual clause was in fact unconstitutionally vague. We appointed counsel to represent Granda and ordered a new round of briefing.

II.

To begin, we have (and the district court had) jurisdiction over Granda's § 2255 petition. "While neither party has raised the issue of whether we have subject matter jurisdiction over this case, we are obliged to address the issue" sua sponte. Arthur v. Haley, 248 F.3d 1302, 1303 n.1 (11th Cir. 2001). Because

8

this is Granda's second § 2255 petition, he properly asked this Court for certification to file it. We authorized Granda's second petition because he relied on Johnson, which had established a new, retroactive rule of constitutional law. See 28 U.S.C. § 2255(h) ("A second or successive motion must be certified as provided in section 2244 . . . to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."). We have jurisdiction over this appeal from the denial of an authorized second § 2255 petition. See 28 U.S.C. § 2253(a), (c)(1).

To be sure, we gave Granda leave to file a Johnson challenge -- the Supreme Court had not yet decided Davis, so we did not (nor could we then) certify that Granda's second petition "contain[ed]" the new rule of constitutional law Davis announced. See 28 U.S.C. § 2255(h). Section 2255(h) instructs us to certify "as provided in section 2244" that a second or successive motion contains a new rule of constitutional law; in turn, § 2244 focuses on whether a "claim" contains a new constitutional rule, not on whether the motion as a whole does. 28 U.S.C. § 2244(b)(2). And in In re Hammoud, a panel of this Court held that a Johnson claim is distinct from a Davis claim for purposes of the rule against filing repeat petitions raising claims that had been previously rejected. See 931 F.3d 1032, 1039–40 (11th Cir. 2019). One might argue, then, that while we have authorized Granda to bring a Johnson claim, we did not authorize the filing of a Davis claim.

See Morton v. United States, 776 F. App'x 651, 652–53 (11th Cir. 2019) (unpublished per curiam opinion).  Of course, a district court is without jurisdiction to consider an unauthorized second or successive petition.  Farris v. United States, 333 F.3d 1211, 1216 (11th Cir. 2003).

But to resolve the Johnson claim we did authorize, we can, indeed we must, apply the controlling Supreme Court law of Davis.  As this Court held en banc in United States v. Johnson, "when 'a precedent of the Supreme Court has direct application,' we must follow it."  921 F.3d 991, 1001 (11th Cir.) (en banc) (alteration accepted) (citation omitted), cert. denied, 140 S. Ct. 376 (2019); see also Brown, 942 F.3d at 1072 (applying Davis to resolve a pre-Davis petition that raised a Johnson claim).  Davis extended the reasoning of Johnson, providing us with the answer to a question central to Granda's petition: whether the § 924(c)(3)(B) residual clause is unconstitutionally vague.  Applying Davis to resolve Granda's vagueness claim does not transform the authorized claim -- which originally relied on Johnson -- into a distinct, unauthorized Davis claim.  Indeed, a contrary holding would yield the odd result that the Supreme Court's eventual endorsement of the constitutional right argued for in Granda's petition now precludes him from seeking to vindicate that very right, even though he complied with all procedural requirements.  Granda could not now file a new petition based on Davis, because

10

the one-year statute of limitations on such claims has run. 28 U.S.C. § 2255(f)(3).

We are obliged to follow Davis, and we have jurisdiction.

III.

A.

Granda challenges his conviction on Count 6, conspiracy to use or carry a

firearm during and in relation to, and to possess a firearm in furtherance of, a drug-

trafficking crime or a crime of violence in violation of 18 U.S.C. § 924(o). In

relevant part, § 924(o) provides that "[a] person who conspires to commit an

offense under subsection (c) shall be imprisoned for not more than 20 years, fined

under this title, or both." 18 U.S.C. § 924(o). In turn, § 924(c) provides:

> Except to the extent that a greater minimum sentence is otherwise
> provided by this subsection or by any other provision of law, any person
> who, during and in relation to any crime of violence or drug trafficking
> crime . . . for which the person may be prosecuted in a court of the
> United States, uses or carries a firearm, or who, in furtherance of any
> such crime, possesses a firearm, shall, in addition to the punishment
> provided for such crime of violence or drug trafficking crime--
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years
> > . . . .

Id. § 924(c)(1)(A). The statute straightforwardly defines a "drug trafficking crime"

(in relevant part) as "any felony punishable under the Controlled Substances Act

(21 U.S.C. 801 et seq.)." Id. § 924(c)(2). The definition of "crime of violence" is

a bit more complex:

> For purposes of this subsection the term "crime of violence" means an
> offense that is a felony and--

11

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Id. § 924(c)(3).  Subsection (A) is known as the "elements clause" and subsection (B) as the "residual clause."

Since Granda filed the instant § 2255 petition, there has been a deluge of legal developments related to § 924(c)(3).  The following state of affairs now greets Granda's appeal:

- Count 1, conspiracy to possess with intent to distribute cocaine, is a "drug trafficking crime" and is, therefore, a valid predicate for Granda's Count 6 conviction.  (Granda does not dispute that Counts 1 and 2 are "drug trafficking crimes," nor could he.)

- Count 2, attempt to possess with intent to distribute cocaine, is a "drug trafficking crime" and is, therefore, a valid predicate for Granda's Count 6 conviction.

- Count 3, conspiracy to commit Hobbs Act robbery, is <u>not</u> a valid potential predicate for Granda's Count 6 conviction.  It is not a drug-trafficking offense, so it must qualify, if at all, as a crime of violence.  But the § 924(c)(3) residual clause is unconstitutionally vague under <u>Davis</u>, 139 S. Ct. at 2336, and conspiracy to commit Hobbs Act robbery categorically is not a crime of violence under the § 924(c)(3) elements clause.  <u>Brown</u>, 942 F.3d at 1075.

- Count 4, attempted Hobbs Act robbery, categorically qualifies as a crime of violence under the § 924(c)(3) elements clause and is, therefore, a valid predicate for Granda's Count 6 conviction.  <u>United States v. St. Hubert</u>, 909 F.3d 335, 351–53 (11th Cir. 2018), <u>abrogated on other grounds by</u> <u>Davis</u>, 139 S. Ct. at 2336.

- Count 5, attempted carjacking, categorically qualifies as a crime of violence under the § 924(c)(3) elements clause and is, therefore, a valid predicate for

Granda's Count 6 conviction. Ovalles v. United States, 905 F.3d 1300, 1305–07 (11th Cir. 2018).

- Davis applies retroactively to Granda's case. Hammoud, 931 F.3d at 1037–39.

Thus, any one of Counts 1, 2, 4, or 5 could have validly predicated Granda's Count 6 conviction. Count 3 could not have. But we cannot tell from the general verdict whether the jury relied on Counts 1, 2, 4, or 5 (alone or in combination with one another), or on any of them in addition to Count 3, or on Count 3 alone. Nor can we tell from the superseding indictment, which simply alleged in Count 6:

> [Granda and his co-defendants] did knowingly and intentionally combine, conspire, confederate, and agree with each other to use and carry a firearm during and in relation to a crime of violence and a drug trafficking crime, and to possess a firearm in furtherance of a crime of violence and a drug trafficking crime, which are felonies prosecutable in a court of the United States, specifically . . . Counts 1, 2, 3, 4, and 5 of this Indictment . . . .

The jury instructions likewise did not shed any light on the problem. The district court told the jury that in order to sustain a conviction on Count 6, they had to find beyond a reasonable doubt that "the object of the unlawful plan was to use or carry a firearm during and in relation to, or to possess a firearm in furtherance of, one of the federal drug trafficking crimes, or one of the federal crimes of violence, or both, as charged in counts 1, 2, 3, 4, or 5 of the Superseding Indictment."

If the jury relied on Count 3 alone, Granda would have been convicted of violating an unconstitutionally vague law, which "[i]n our constitutional order . . . is no law at all." Davis, 139 S. Ct. at 2323. Granda claims that we cannot

13

definitively rule out this possibility and, therefore, must vacate his conviction on Count 6. We remain unpersuaded.

### B.

First, procedural default. This problem arises because Granda did not argue in the trial court, or on direct appeal, that his § 924(o) conviction was invalid since the § 924(c)(3)(B) residual clause was unconstitutionally vague. "[A] defendant generally must advance an available challenge to a criminal conviction on direct appeal or else the defendant is barred from raising that claim in a habeas proceeding." See Fordham v. United States, 706 F.3d 1345, 1349 (11th Cir. 2013). He, therefore, procedurally defaulted this claim and cannot succeed on collateral review unless he can either (1) show cause to excuse the default and actual prejudice from the claimed error, or (2) show that he is actually innocent of the § 924(o) conviction. Id. Granda cannot establish cause, actual prejudice, or actual innocence. Thus, he cannot collaterally attack his conviction on a vagueness theory.

We review de novo whether procedural default precludes a § 2255 petitioner's claim, which is a mixed question of law and fact. Id. at 1347.

*1. Granda's claim is not sufficiently novel to establish cause.*

"[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the

14

claim." Howard v. United States, 374 F.3d 1068, 1072 (11th Cir. 2004) (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)) (internal quotation marks omitted). "That an argument might have less than a high likelihood of success has little to do with whether the argument is available or not. An argument is available if there is a reasonable basis in law and fact for it." Pitts v. Cook, 923 F.2d 1568, 1572 n.6 (11th Cir. 1991). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all." McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001) (internal quotation marks and citation omitted).

Granda brought his claim under Johnson (arguing that Johnson's reasoning should be extended to § 924(c)(3)(B)); Davis then reinforced the basis for his claim. Both Johnson and Davis announced new constitutional rules, and each has been held to have retroactive application. Welch v. United States, 136 S. Ct. 1257, 1268 (2016); Hammoud, 931 F.3d at 1037–39. To establish novelty "sufficient to provide cause" based on a new constitutional principle, Granda must show that the new rule was "a sufficiently clear break with the past, so that an attorney representing [him] would not reasonably have had the tools for presenting the claim." Howard, 374 F.3d at 1072 (internal quotation marks and citations omitted). In Reed v. Ross, the Supreme Court identified three circumstances in which novelty might constitute cause for defaulting a claim. First, when a decision

15

of the Supreme Court explicitly overrules one of its precedents, cause exists to excuse default of a claim based on the new decision. 468 U.S. at 17. Second, when a Supreme Court decision overturns a "longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved," cause exists. Id. (internal quotation marks and citation omitted).

The third category -- when a Supreme Court decision disapproves of "a practice [the Supreme Court] arguably has sanctioned in prior cases" -- is more complicated. Id. (internal quotation marks and citation omitted). For this category, we analyze "whether others were recognizing and raising the same or similar claims in the period preceding or concurrent with the petitioner's failure to raise his claim." Pitts, 923 F.2d at 1572. Importantly, however, "[e]ven if others have not been raising a claim, the claim may still be unnovel if a review of the historical roots and development of the general issue involved indicate that petitioners did not 'lack the tools to construct their constitutional claim.'" Id. at 1572 n.6 (alteration accepted) (quoting Engle v. Isaac, 456 U.S. 107, 133 (1982)). Granda's Davis claim fits most neatly into this third category. (Unlike the Johnson ACCA decision, Davis did not overrule any prior Supreme Court precedents holding that the § 924(c) residual clause was not unconstitutionally vague.)

16

Granda's best argument that his defaulted vagueness claim was not available on direct appeal is that at the time of that appeal,[1] James v. United States, 550 U.S. 192, 210 n.6 (2007) had directly rejected the argument that the ACCA's residual clause was unconstitutionally vague. See Johnson, 576 U.S. at 594 (In James, "the Court rejected suggestions . . . that the [ACCA's] residual clause violates the Constitution's prohibition of vague criminal laws.").

However, James did not consider the § 924(c) residual clause at all. In fact, James indicated that at least three Justices were interested in entertaining vagueness challenges to the ACCA's residual clause, and perhaps to similar statutes. See James, 550 U.S. at 229–31 (Scalia, J., dissenting, joined by Justices Stevens and Ginsburg) (noting that the "shoddy draftsmanship" of the ACCA's residual clause left courts to choose between narrowing its scope and "recogniz[ing] the statute for the drafting failure it is and hold[ing] it void for vagueness"). Even more revealing, other defendants did challenge the ACCA's residual clause on vagueness grounds after James (but before Johnson). See, e.g., United States v. Devo, 457 F. App'x 908, 910 (11th Cir. 2012); United States v. LaCasse, 567 F.3d 763, 765 (6th Cir. 2009); United States v. Spells, 537 F.3d 743, 753 n.4 (7th Cir. 2008); United States v. Verner, 300 F. App'x 435, 435 (8th Cir. 2008); United States v. Brown, No. 2:11-cr-30-FtM-29DNF, 2012 WL 39383, at

---

[1] We issued our decision in Granda's direct appeal on September 29, 2009.

17

*5 (M.D. Fla. Jan. 9, 2012).  These claims did not succeed.  But if James did not deprive litigants of the tools to challenge even the ACCA's residual clause on vagueness grounds, it surely did not deprive them of the tools to challenge the § 924(c) residual clause, a clause to which James did not even apply.

Moreover, the case law extant at the time of Granda's appeal confirms that he did not then lack the "building blocks of" a due process vagueness challenge to the § 924(c) residual clause.  United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020).  To be sure, few courts, if any, had addressed a vagueness challenge to the § 924(c) residual clause before the conclusion of Granda's direct appeal.  Still, as a general matter, due process vagueness challenges to criminal statutes were commonplace.  Thus, for example, litigants had for years before Granda's appeal argued (without success) that various other provisions of § 924(c) were unconstitutionally vague.  See United States v. Whitehead, 257 F. App'x 777, 784 (5th Cir. 2007) (vagueness challenge to the term "not less than 7 years" in § 924(c)(1)(A)(ii)); United States v. Hungerford, 465 F.3d 1113, 1117 (9th Cir. 2006) (vagueness challenge to the term "second or subsequent conviction" in § 924(c)(1)(C)(i)); United States v. Helton, 86 F. App'x 889, 891 (6th Cir. 2004) (vagueness challenge to the term "in furtherance of" in § 924(c)(1)(A)); United States v. Bennett, 165 F.3d 36 (Table), at *1 (9th Cir. 1998) (vagueness challenge to the term "firearm" as applied to a silencer); United States v. Pettit, 933 F.2d

18

1017 (Table), at *1 n.1 (9th Cir. 1991) (vagueness challenges to the terms "during and in relation to" and "uses or carries a firearm" in § 924(c)(1)(A)); United States v. Meyer, 803 F.2d 246, 248 (6th Cir. 1986) (vagueness challenge to § 924(c); unclear which clause).

That few, if any, litigants had contended that the § 924(c) residual clause was unconstitutionally vague before the conclusion of Granda's appeal arguably cuts in favor of finding novelty. But as Pitts makes clear, the behavior of other litigants is not the whole of the inquiry. The tools existed to challenge myriad other portions of § 924(c) as vague; they existed to support a similar challenge to its residual clause. Granda cannot show cause to excuse his procedural default.

2. *Granda cannot show actual prejudice.*

Even if Granda could show cause, however, he still could not overcome the procedural default of his vagueness claim because he cannot show actual prejudice.

"To prevail on a cause and prejudice theory, a petitioner must show actual prejudice. Actual prejudice means more than just the possibility of prejudice; it requires that the error worked to the petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Fordham, 706 F.3d at 1350 (alteration accepted) (internal quotation marks and citation omitted). The actual prejudice standard is "more stringent than the plain error standard." Parks v. United States, 832 F.2d 1244, 1245 (11th Cir. 1987)

19

(internal quotation marks omitted).  The "ultimate inquiry" is: "Did the intrusion affect the jury's deliberations and thereby its verdict?"  Ward v. Hall, 592 F.3d 1144, 1178–79 (11th Cir. 2010) (internal quotation marks and citation omitted).

So it is not enough for Granda to show that the jury may have relied on the Count 3 Hobbs Act conspiracy conviction as the predicate for his Count 6 § 924(o) conviction; Granda must show at least a "substantial likelihood," see Ward, 592 F.3d at 1180, that the jury actually relied on the Count 3 conviction to provide the predicate offense.  More specifically, he must establish a substantial likelihood that the jury relied only on the Count 3 conviction, because reliance on any of Counts 1, 2, 4, or 5 would have provided a wholly independent, sufficient, and legally valid basis to convict on Count 6.  If the absence of the invalid Count 3 predicate would not likely have changed the jury's decision to convict, Granda has not suffered actual prejudice.[2]  Cf. United States v. Frady, 456 U.S. 152, 172 (1982) (no actual prejudice from erroneous jury instructions existed where, on the facts of

---

[2] Granda disputes this burden, arguing that the prejudice from having possibly been convicted of a non-existent crime is self-evident.  He relies on Davis v. United States, 417 U.S. 333, 346–47 (1974) ("If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal.  There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under § 2255.") (international quotation marks omitted).  But in Davis, the provision the petitioner claimed was invalid and so could not criminalize his conduct was the sole basis for his charge and conviction.  His conviction under that provision therefore necessarily established prejudice.  In sharp contrast, Granda could have been convicted under one or more of several valid predicates, so in order to establish prejudice he must show that the invalid predicate was actually the basis for his conviction.

the case, there was "no substantial likelihood" that the jury would have mitigated a first-degree murder conviction to manslaughter if "only the malice instructions had been better framed").

Granda cannot make this showing. Based on his role as a lookout in a conspiracy and an attempt to rob at gunpoint a truck carrying some sixty to eighty kilograms of cocaine, the jury unanimously found Granda guilty of conspiracy and attempt to possess cocaine with intent to distribute, attempted carjacking, conspiracy to commit Hobbs Act robbery, and attempt to commit Hobbs Act robbery. Granda, 346 F. App'x at 525. The trial record makes it abundantly clear that all of these findings rested on the same operative facts and the same set of events -- the jury found beyond a reasonable doubt that Granda had conspired and attempted to rob the truck in order to possess and distribute the cocaine it held. The evidence supporting Granda's alleged conspiracy to possess a firearm in furtherance of these crimes included Paulino's instruction to Granda, who was to act as a lookout during the robbery, to bring a pistol. Notably, Granda also attended a meeting at which the co-conspirators packed guns and makeshift handcuffs for the robbery and discussed the execution of the crime.

As for Granda's knowledge of the drug-trafficking objective of the robbery, this Court explained in affirming his convictions on direct appeal:

> [T]he jury was presented with evidence that (1) Paulino . . . specifically identified Granda in discussing the drug theft  . . . ; (2) Granda was

21

present during two-drug related meetings, one of which involved explicit discussion of marijuana; (3) Granda had telephone contact with various members of the conspiracy during critical times in planning and executing the drug theft; (4) vague references to the cocaine robbery were made to Granda or in his presence; (5) and Granda was apprehended within close proximity to the scene of the robbery.

Id. at 527.  The objective of the robbery and the carjacking was the same: to obtain and sell the multi-kilogram quantity of cocaine that was to be taken by force from the truck.  So the jury could not have concluded that Granda conspired to possess a firearm in furtherance of his robbery conspiracy without also finding at the same time that he conspired to possess the firearm in furtherance of his conspiracy and attempt to obtain and distribute the cocaine, his attempt at carjacking, and the attempt at the robbery itself.

United States v. Cannon, No. 16-16194, manuscript op. at 40–47 (11th Cir. Feb. 3, 2021) ("Lance Cannon"), which presents very similar facts, underscores and compels this conclusion.  There, the defendants were convicted of several crimes -- including using and carrying a firearm during and in relation to a drug trafficking crime in violation of § 924(c) -- for participating in a scheme to rob a cocaine stash house.  The indictment listed both an invalid predicate (Hobbs Act conspiracy) and a valid predicate (conspiracy to possess cocaine with intent to distribute) for this charge.  Id. at 1–2, 37–39.  Like Granda, the defendants argued that "because the jury entered a general verdict, [the court could not] know if the jury unanimously found their guns connected to the now-invalid Hobbs Act

22

robbery conspiracy predicate or the still-valid cocaine conspiracy predicate." Id. at 39. We rejected the argument and held that the government had sustained its burden of proving that the error of submitting the invalid predicate to the jury was harmless. We reasoned:

> [T]he trial evidence established the same facts and time period underlying each [predicate offense]. The cocaine the defendants were planning to rob from the narcotics traffickers was the same cocaine they were planning to possess with the intent to distribute. Undisputedly, the goal of the robbery scheme was to steal cocaine from a stash house so they could then distribute it themselves. . . . No reasonable juror could have found that Cannon and Holton carried their firearms in relation to the Hobbs Act robbery conspiracy but not the cocaine conspiracy.

Id. at 42–43. And the jury had convicted the defendants of both the underlying Hobbs Act conspiracy and the conspiracy to possess cocaine with intent to distribute, which "conclusively establish[ed] that the jury unanimously found beyond a reasonable doubt that the defendants were conspiring to rob the stash house of cocaine so they could then possess and distribute the cocaine themselves." Id. at 42.

The "trial record ma[de] clear that the two predicate . . . crimes were so inextricably intertwined that no rational juror could have found that [the defendants] carried a firearm in relation to one predicate but not the other." Id. at 41. So, too, with Granda's predicates. See also In re Cannon, 931 F.3d 1236, 1243–44 (11th Cir. 2019) (observing in dicta that, even on the limited record

23

available at the second or successive § 2255 petition authorization stage, there was "some indication that" the challenged § 924(o) conviction "did not rest solely" on a Hobbs Act conspiracy predicate "because (1) the robberies were inextricably intertwined with the [alternative predicate of] conspiracy to possess with intent to distribute cocaine and marijuana, and (2) the jury found the narcotics conspiracy proven beyond a reasonable doubt."); In re Navarro, 931 F.3d 1298, 1302 & n.2 (11th Cir. 2019) (concluding based on the record available -- a factual proffer which the § 2255 petitioner had acknowledged was accurate -- that Hobbs Act conspiracy and drug trafficking predicates "seem[ed] inextricably intertwined, given the planned robbery underlying the charge for conspiracy to commit Hobbs Act robbery was the robbery of a drug stash house").

Granda cites no record evidence to suggest otherwise. At trial, he did not offer a theory that would have permitted the jury to drive a wedge between any plan to possess a firearm in furtherance of his conspiracy-to-rob and his attempt-to-rob. As we've noted, Granda's defense at trial was that he believed Paulino, the leader of the conspiracy, was working as a government informant; Granda thus argued that he thought he was assisting a legitimate law enforcement effort and lacked the requisite criminal intent. But the jury plainly did not credit this account, finding Granda guilty of conspiracy and attempt to commit robbery and to possess cocaine with intent to distribute, along with attempted carjacking. If the jury did

24

not believe Granda's claim that he thought he was helping a government agent with respect to planning to possess a firearm in furtherance of the conspiracy-to-rob count, it could not believe this claim with respect to the other counts, either.

Granda did offer a theory that might have permitted jurors to distinguish between his conspiracy-to-rob and the drug-trafficking offenses -- he argued "that he knowingly participated in a robbery, but not a cocaine robbery," Granda, 346 F. App'x at 527 -- but the jury rejected this defense, too, finding beyond a reasonable doubt that he conspired and attempted to possess cocaine with the intent to distribute.[3]  And we know that the jurors did not split into two camps, one of which found that Granda conspired to possess a firearm in furtherance of one or more valid predicates while the other found Granda conspired to possess a firearm only in furtherance of the Hobbs Act conspiracy.  Besides the lack of any record evidence to suggest such a split, the district court instructed the jury that it must "unanimously agree upon the way in which the defendant" violated § 924(o).  See Lance Cannon, No 16-16194, manuscript op. at 46 (relying on a similar instruction to conclude "that it is not possible some of the jurors found that the defendants carried a firearm only during the Hobbs Act robbery conspiracy, while some other

---

[3] We also rejected Granda's lack-of-knowledge argument on direct appeal because there was sufficient evidence from which the jury "could have reasonably inferred that [Granda] was a knowing participant in a drug conspiracy."  Granda, 346 F. App'x at 527.  And that is exactly the inference the jury drew.

25

jurors found that they did so only during the cocaine conspiracy"); In re Price, 964 F.3d 1045, 1049 (11th Cir. 2020) ("We not only can, but we must, presume that juries follow their instructions.").

Granda argues, nevertheless, that the jury's acquittal on Count 7 -- which charged Granda with using and carrying a firearm during, and with possessing a firearm in furtherance of, a crime of violence and drug-trafficking crime in violation of § 924(c) -- suggests "that the jury convicted him of § 924(o) based on his conduct in joining the conspiracy, rather than because the jury found that he used or possessed a firearm in connection with any substantive crime." But the jury's conclusion that Granda did not actually possess a firearm in connection with a crime of violence or drug-trafficking crime, but did conspire to do so, is just as consistent with predicating the § 924(o) conviction on the other inchoate crimes -- attempt-to-rob, attempt-to-carjack, and attempt/conspiracy to possess cocaine with intent to distribute -- as it is with predicating the § 924(o) conviction on the conspiracy-to-rob crime. Such equipoise does not help Granda meet his burden to show a substantial likelihood of actual prejudice.

In short, just as in Lance Cannon, the alternative predicate offenses are inextricably intertwined -- each arose from the same plan and attempt to commit armed robbery of a tractor-trailer full of cocaine. The tightly bound factual relationship of the predicate offenses precludes Granda from showing a substantial

26

likelihood that the jury relied solely on Count 3 to predicate its conviction on Count 6.  Cf. Lomelo v. United States, 891 F.2d 1512, 1516, 1519 (11th Cir. 1990).

*3.  Granda cannot show actual innocence.*

Inasmuch as Granda cannot establish both cause and prejudice, his only way around procedural default would be to establish that he is actually innocent of the § 924(o) conviction.  This he cannot do.  The actual innocence exception to the procedural default bar is "exceedingly narrow in scope as it concerns a petitioner's actual innocence rather than his legal innocence.  Actual innocence means factual innocence, not mere legal innocence."  Lynn v. United States, 365 F.3d 1225, 1235 n.18 (11th Cir. 2004) (alterations accepted) (internal quotation marks and citations omitted).  "To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotation marks and citation omitted).

To demonstrate actual innocence of the § 924(o) offense, Granda would have to show that no reasonable juror would have concluded he conspired to possess a firearm in furtherance of any of the valid predicate offenses.  In the face of the overwhelming corpus of evidence of Granda's plan to possess a firearm in furtherance of an attempted robbery of a cocaine truck, Granda cannot make this

27

showing, nor does he try.  Instead, he admits that his actual innocence argument "rises and falls with the merits of [his] argument that his [§ 924(o)] conviction is 'based on' conspiracy to commit Hobbs Act robbery."  But the same shortcoming that prevents Granda from showing actual prejudice -- that the valid drug-trafficking and crime-of-violence predicates are inextricably intertwined with the invalid conspiracy-to-rob predicate -- makes it impossible for Granda to show that his § 924(o) conviction was in fact based on the conspiracy-to-rob predicate.

Since Granda can show neither cause, nor prejudice, nor actual innocence, he cannot overcome procedural default.

### C.

Even were we to assume that the overlap between the valid and invalid predicates did not bar Granda's claim on procedural default grounds, the same problem would rear its head again on the merits.  The inextricability of the alternative predicate crimes compels the conclusion that the error Granda complains about -- instructing the jury on a constitutionally invalid predicate as one several of potential alternative predicates -- was harmless.

On collateral review, the harmless error standard mandates that "relief is proper only if the . . . court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.  There must be more than a reasonable possibility that the error was

harmful." Davis v. Ayala, 576 U.S. 257, 267–68 (2015) (internal quotation marks and citations omitted); Ross v. United States, 289 F.3d 677, 682 (11th Cir. 2002) (per curiam) (applying this standard to a § 2255 motion). Put another way, the court may order relief only if the error "resulted in actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).

"We do not phrase the [Brecht] requirement as a burden of proof, for it is not." Trepal v. Sec'y, Fla. Dep't of Corr., 684 F.3d 1088, 1111 n.26 (11th Cir. 2012); see O'Neal v. McAninch, 513 U.S. 432, 436, 438 (1995) (explaining that Brecht's use of language suggesting the petitioner must establish prejudice "is not determinative" and "deliberately phras[ing] the issue . . . in terms of a judge's grave doubt, instead of in terms of 'burden of proof'"); McWilliams v. Comm'r, Ala. Dep't of Corr., 940 F.3d 1218, 1230 (11th Cir. 2019) (Jordan, J., concurring in the judgment) (Brecht "is not a burden of proof."). Instead, the reviewing court should "ask directly" whether the error substantially influenced the jury's decision. O'Neal, 513 U.S. at 436. Still, if the court "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," the court must conclude that the error was not harmless. Trepal, 684 F.3d at 1114 (quoting

29

O'Neal, 513 U.S. at 437).  We review de novo the question of harmlessness under

Brecht.  Phillips v. United States, 849 F.3d 988, 993 (11th Cir. 2017).

This record does not provoke grave doubt about whether Granda's § 924(o)

conviction rested on an invalid ground.  As we have explained, Granda's

conspiracy to commit Hobbs Act robbery was inextricably intertwined with the

other predicate offenses.  There is little doubt that if the jury found that Granda

conspired to possess a firearm in furtherance of his conspiracy to commit Hobbs

Act robbery, it also found that he conspired to possess a firearm in furtherance of

the other crime-of-violence and drug-trafficking predicates of which the jury

convicted him.  On this record, there can be no grave doubt about whether the

inclusion of the invalid predicate had a substantial influence in determining the

jury's verdict.  See O'Neal, 513 U.S. at 435 (1995) ("By 'grave doubt' we mean

that, in the judge's mind, the matter is so evenly balanced that he feels himself in

virtual equipoise as to the harmlessness of the error."); cf. Lance Cannon, No. 16-

16194, manuscript op. at 41 (trial record "ma[de] clear" that no rational juror could

have found that defendants carried firearms in connection with a conspiracy to rob

a cocaine stash house but not also in connection with a conspiracy to possess with

intent to distribute the cocaine to be taken from the house).

Granda marshals several arguments against the application of Brecht.  None

are persuasive.  First, Granda says that it is improper to rely on the presence of

30

alternative, valid grounds for conviction to conduct a harmless error analysis. This argument largely rests on Stromberg v. California, 283 U.S. 359, 367–68 (1931), which stands for "the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." Griffin v. United States, 502 U.S. 46, 53 (1991); see also Yates v. United States, 354 U.S. 298, 312 (1957) ("[W]e think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."), overruled in part on other grounds by Burks v. United States, 473 U.S. 1, 10–18 (1978).

In Parker v. Sec'y for Dep't of Corr., also cited by the petitioner, we held that Stromberg barred the conclusion that an allegedly deficient felony murder instruction -- the judge had given a written instruction on felony murder but had failed to mention felony murder during his oral instructions -- was harmless solely because there was a valid, alternative basis for the petitioner's first-degree murder conviction (a premeditation instruction). 331 F.3d 764, 778–79 (11th Cir. 2003) ("[E]rror with respect to one independent basis is not rendered harmless solely because of the availability of another independent basis where it is impossible to say on which basis the jury's verdict rests."); see also Adams v. Wainwright, 764 F.2d 1356, 1362 (11th Cir. 1985). Thus, in Parker, a panel of this Court focused its

31

harmless error analysis only on the allegedly invalid basis for the first-degree murder conviction (felony murder). 331 F.3d at 779–80. Granda, therefore, argues that Parker bars us from looking behind his verdict to determine whether his § 924(o) conviction might have rested on an alternative, valid ground.

But, notably, after we decided Parker, the Supreme Court held in Hedgpeth v. Pulido that Stromberg error is subject to the Brecht harmless error standard. Hedgpeth, 555 U.S. 57, 58, 62 (2008) (per curiam). The Court concluded that a Stromberg error is not structural; it does not "require[] automatic reversal." Id. at 60–62. It expressly rejected the standard the Ninth Circuit had applied in that case, which required that the conviction be overturned unless the court was "absolutely certain" that the jury relied on a valid ground. Id. at 62 (citation omitted). This standard was "plainly inconsistent with" Brecht, id., which held that reversal is warranted only when the petitioner suffered "actual prejudice" from the error, Brecht, 507 U.S. at 637 (citation omitted). "An instructional error arising in the context of multiple theories of guilt" does not "vitiate[] all the jury's findings." Hedgpeth, 555 U.S. at 61.

Thus, it is proper to look at the record to determine whether the invalid predicate actually prejudiced the petitioner -- that is, actually led to his conviction -- or whether the jury instead (or also) found the defendant guilty under a valid theory. Limiting harmless error review to the invalid basis alone, as Granda

32

suggests, would in this case effectively entitle Granda to relief if the jury may have relied on the invalid predicate to convict. But this result cannot be reconciled with with Brecht's requirement that "[t]here must be more than a reasonable possibility that the error was harmful," Ayala, 576 U.S. at 268 (internal quotation marks and citation omitted), or with the Supreme Court's rejection in Hedgpeth of a standard requiring automatic reversal if there is any chance that the jury relied on an invalid basis, see id. (explaining that Brecht rejects the idea that relief is appropriate based on "mere speculation that the defendant was prejudiced by trial error") (internal quotation marks and citation omitted).

Supreme Court cases decided since Hedgpeth confirm this conclusion. See Skilling v. United States, 561 U.S. 358, 414 n.46 (2010) ("The Fifth Circuit appeared to prejudge this issue, noting that, 'if any of the three objects of Skilling's conspiracy offers a legally insufficient theory,' it 'must set aside his conviction.' That reasoning relied on the mistaken premise that [Hedgpeth] governs only cases on collateral review. Harmless-error analysis, we clarify, applies equally to cases on direct appeal. Accordingly, the Fifth Circuit, on remand, should take a fresh look at the parties' harmless-error arguments." (citations omitted)); see also Black v. United States, 561 U.S. 465, 467, 474 (2010) (recognizing the possibility that error in instructing an honest-services fraud defendant's jury on two alternative theories, one of which was invalidated by Skilling, 561 U.S. at 368, may have been

33

harmless).  Skilling and Black involved direct review, but to the extent this distinction makes any difference, the harmlessness inquiry is more searching on collateral review than on direct review.  See Brecht, 507 U.S. at 637.

Next, Granda claims that "[t]he categorical approach requires the Court to presume that [his] conviction [on] Count 6 rests on [the] Hobbs Act conspiracy." This argument misapprehends the categorical approach, which courts use to determine whether a particular offense qualifies under crime-of-violence-type elements clauses such as those found in § 924(c)(3)(A) and in the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).  Under the categorical approach, we "examin[e] only the elements of the statute of conviction, not the specific conduct of a particular offender."  United States v. Oliver, 962 F.3d 1311, 1316 (11th Cir. 2020) (internal quotation marks and citation omitted).  We first assume that the conviction rested on the "'least of the acts criminalized' by the statute," because to determine upon which of the criminalized acts the conviction rested would violate the categorical approach's command not to analyze the facts underlying the conviction.  Id. (quoting Moncrieffe v. Holder, 569 U.S. 184, 190–91 (2013)).  Next, the court determines whether that act has an element that brings the offense within the ambit of the relevant clause.  Id.

Granda reasons that because the general verdict does not reveal which predicate the jury relied on to find guilt for the § 924(o) offense, we should apply

34

the categorical approach and just assume that the jury rested its conclusion on the least culpable of the alternative offenses, which Granda contends is the invalid Hobbs Act conspiracy predicate. But Granda cites no authority that justifies extending the categorical approach -- a method for determining whether a conviction under a particular statute qualifies as a predicate offense under a particular definitional clause -- to the context of determining on which of several alternative predicates a jury's general verdict relied.

Granda claims that the categorical approach must apply because determining that the jury did not rely solely on the Hobbs Act conspiracy predicate to convict would constitute impermissible judicial factfinding in violation of Alleyne v. United States, 570 U.S. 99, 114–16 (2013). Alleyne applies to findings of fact that increase a mandatory minimum, thereby "alter[ing] the prescribed range of sentences to which a defendant is exposed . . . in a manner that aggravates the punishment." Id. at 108. Such facts, Alleyne holds, must be proven to a jury beyond a reasonable doubt. Id. For example, a sentencing judge may not look at the evidence afresh to determine by a preponderance of the evidence whether a defendant "brandished" a firearm during an offense and is therefore subject to an increased mandatory minimum. See id. at 117. But a judge conducting a Brecht harmless error analysis does not find a fact at all; instead, the judge asks as a matter of law whether there is grave doubt about whether an instruction on an

35

invalid predicate substantially influenced what the jury already found beyond a reasonable doubt.  See Phillips, 849 F.3d at 993.  Absent any sound reason for doing so, we decline Granda's invitation to adopt what we see as an unprecedented expansion of the categorical approach.

Finally, In re Gomez, 830 F.3d 1225 (11th Cir. 2016) does not help Granda. In Gomez, a § 2255 petitioner's indictment had charged him with carrying and possessing a firearm "in relation to a crime of violence and a drug trafficking crime" in violation of § 924(c).  Id. at 1226–27.  The indictment listed as predicates two of the other counts charged, conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery.  Id. at 1227.  A jury convicted Gomez with a general verdict.  Id.  We held that Gomez had made a prima facie showing sufficient to receive authorization to file a second or successive § 2255 motion alleging that his § 924(c) conviction rested on an invalid predicate "[s]ince the jury may have found that Gomez only 'possessed' a firearm during his Hobbs Act conspiracy offense."  Id. at 1228.  The "general verdict of guilty [did] not reveal any unanimous finding by the jury that the defendant was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of [the] predicate offenses, or guilty of conspiring during some and not others."  Id. at 1227.

But this prima facie decision is not inconsistent with a holding that, on the merits, the harmless error inquiry requires an examination of whether alternative,

36

valid predicates grounded Granda's conviction.  In <u>Gomez</u>, this Court expressly noted that it was for the district court to consider the merits of Gomez's petition -- so it left open the possibility that the district court would apply <u>Brecht</u> on the merits.  <u>Id.</u> at 1228; <u>see also</u> <u>id.</u> at 1229 (Carnes, C.J., concurring) ("The district court will determine, in the first instance, which crimes constitute the basis for Gomez's § 924(c) sentence.").  Thus, <u>Gomez</u> does not stand for the proposition that a court may not inquire as to which of several alternative predicates actually supplied the basis for a § 924(c) (or (o)) conviction or that a court is constrained to assume the verdict rested on the least culpable predicate offense.

We, therefore, hold, in addition to our conclusion that procedural default bars Granda's claim, that Granda did not suffer harm from the erroneous jury instruction.

Accordingly, we **AFFIRM**.

37

JORDAN, Circuit Judge, concurring in part and concurring in the judgment.

I join Parts I, II, III.A, and III.C of the court's opinion and concur in the judgment.  Because Mr. Granda cannot prevail on the merits, I would not address the issue of procedural default and therefore do not join Part III.B.