[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12337
Non-Argument Calendar

_____

D.C. Docket Nos. 0:16-cv-61848-JIC,
0:07-cr-60153-JIC-2

BOBBY MARTIN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 21, 2021)

Before MARTIN, GRANT, and BRASHER, Circuit Judges.

MARTIN, Circuit Judge:

Bobby Martin was convicted after a jury trial on seven charges related to a conspiracy to rob a cocaine stash house.  He now appeals the denial of his 28 U.S.C. § 2255 petition, arguing that one of his convictions is invalid in light of United States v. Davis, 588 U.S. __, 139 S. Ct. 2319 (2019).  Davis invalidated 18 U.S.C. § 924(c)'s residual clause on the ground that it is unconstitutionally vague. 139 S. Ct. at 2336.

While this appeal was pending, this Circuit issued a published decision in Granda v. United States, 990 F.3d 1272 (11th Cir. 2021), which resolved the open issues in Mr. Martin's case against him.  After careful consideration, and on the basis of Granda, we therefore affirm the denial of the § 2255 petition.

**I**

In 2007, a confidential information tipped off the Bureau of Alcohol, Tobacco, and Firearms ("ATF") that a particular group of people, which came to include Mr. Martin, wanted to rob a target of cash or drugs.  That informant worked with an undercover ATF agent to investigate this group.  The undercover ATF agent, posing as a disgruntled drug courier who wanted to steal cocaine from his employer, met with the group.  The undercover agent proposed stealing at least 15 kilograms of cocaine from his employer's stash house, which was protected by armed guards.  Mr. Martin and others agreed to the plan.  Specifically, Mr. Martin agreed to commit the robbery, proposed a method of dividing the cocaine they

2

anticipated recovering, and said the guard protecting the cocaine might be killed if he offered any resistance during the robbery.  When asked if the group had the tools to commit the robbery, Mr. Martin assured the undercover agent, "everything is done."

Mr. Martin repeatedly reaffirmed his willingness to perform the robbery.  He said he and his crew would be ready, and again indicated that anyone guarding the cocaine might be killed if he resisted during the robbery:  "I can eliminate everything.  Sometimes guys like that don't deserve to breathe."  Mr. Martin confirmed he had all the materials necessary to commit the robbery, including a silencer, and said he would bring an extra gun to plant it on the guard and "make it look like a drug deal gone bad."  Mr. Martin also reassured the undercover agent that he had experience with these jobs and had been committing robberies for a long time.  Over the next month, Mr. Martin asked about the status of the impending cocaine robbery.  Mr. Martin also discussed with the undercover agent the plan for the robbery.  He explained who would be on lookout while he and another co-conspirator entered the stash house to steal the cocaine.  He assured the undercover agent that all firearms needed for the robbery had been acquired.  He also discussed plans for the proceeds he would earn from selling the stolen cocaine.

On the day of the arranged robbery, Mr. Martin and his co-conspirators met with the undercover agent. Everyone in the group dressed in black and wore skull caps and gloves to conceal their appearances. They again discussed the plan for the robbery.

At that point, law enforcement moved in to arrest the defendants. The vehicle in which Mr. Martin and his co-conspirators came to the scene contained: two loaded rifles (including a short-barreled rifle), binoculars, a knife, a canvas bag to carry cocaine, and other items for use in the robbery. Following his arrest, Mr. Martin confessed that he was going to conduct a robbery of 15 kilograms of cocaine and that the firearms brought to commit the robbery had been used before.

Mr. Martin was charged with conspiracy to obstruct, delay, and affect interstate commerce by means of robbery, in violation of 18 U.S.C. § 1951(a) ("Hobbs Act robbery") (Count 1); conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a) and 846 (Count 2); attempt to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 3); conspiracy to carry a firearm during and in relation to a crime of violence and during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(o) (Count 4); knowingly carrying a firearm during and in relation to a crime of violence and during and in relation to a drug trafficking crime, in violation of 18 U.S.C.

4

§§ 924(c)(1)(A), 924(c)(1)(B), and 2 (Count 5); possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871 and 18 U.S.C. § 2 (Count 6); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 7).

The jury found Mr. Martin guilty on all counts. The District Court sentenced him to 240 months' imprisonment as to Counts 1 and 4; 260 months as to Counts 2 and 3; and 120 months as to Counts 6 and 7; all to run concurrently with each other. The court also sentenced him to 120 months' imprisonment as to Count 5, to be served consecutively to the terms imposed in the other counts. This resulted in a total term of 380 months' imprisonment for Mr. Martin.

In 2016, Mr. Martin filed a motion seeking leave to file a second or successive § 2255 motion, which this Court granted.[1] He argued his § 924(c) conviction should be invalidated in light of Johnson, 576 U.S. 591, 135 S. Ct. 2551, and Welch, 136 S. Ct. 1257. He contended his § 924(c) conviction was no

---

[1] This Court affirmed Mr. Martin's convictions. United States v. Chung, 329 F. App'x 862, 865, 869 (11th Cir. 2009) (per curiam) (unpublished). In October 2009, the Supreme Court denied his petition for writ of certiorari. Mr. Martin then filed his initial § 2255 motion, alleging a variety of claims, which the District Court denied. He then filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 782 to the Sentencing Guidelines, which the District Court granted, reducing Mr. Martin's sentence from 380 months' imprisonment to 328 months' imprisonment. In 2016, Mr. Martin filed a motion to preserve claims under Johnson v. United States, 576 U.S. 591, 135 S. Ct. 2551 (2015), and Welch v. United States, 578 U.S. __, 136 S. Ct. 1257 (2016), in the event those decisions could apply retroactively to career offender provisions. The District Court dismissed the motion as an unauthorized second or successive § 2255 motion.

longer valid because conspiracy to commit Hobbs Act robbery no longer qualified as a crime of violence. The government argued that Mr. Martin's claims were procedurally defaulted; that Johnson did not apply to § 924(c)(3)(B); and that, in any event, his § 924(c) conviction was based on the alternative drug trafficking predicates left unaffected by Johnson.

In 2018, the District Court denied the § 2255 petition and denied a certificate of appealability ("COA") based on this Court's then-binding precedent.[2]

In 2019, the Supreme Court decided Davis, holding that the § 924(c)(3)(B) residual clause was unconstitutionally vague. 139 S. Ct. at 2336. In 2020, this Court granted Mr. Martin a COA on the following issue:

> Whether Martin's conviction for using a firearm in furtherance of a conspiracy to commit Hobbs Act robbery and drug-trafficking crimes in violation of 18 U.S.C. § 924(c) remains valid in light of Davis v. United States, 139 S. Ct. 2319 (2019)?

We now address this issue.

## II

In reviewing a district court's denial of a motion to vacate under 28 U.S.C. § 2255, this Court reviews de novo legal conclusions and reviews factual findings

---

[2] Under this Court's precedent at the time, the District Court was bound to hold that Johnson did not apply to § 924(c)(3)(B). Ovalles v. United States, 861 F.3d 1257 (11th Cir. 2017), reh'g en banc granted and opinion vacated, 889 F.3d 1259 (11th Cir. 2018), and on reh'g en banc, 905 F.3d 1231 (11th Cir. 2018), and opinion reinstated in part, 905 F.3d 1300 (11th Cir. 2018) (per curiam), and abrogated by Davis, 139 S. Ct. 2319.

for clear error.  Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam).

### III

Because we conclude Mr. Martin's Davis challenge fails on the merits, we need not decide whether the argument is procedurally defaulted.

The merits question before us is whether Mr. Martin's conviction for using a firearm, in the furtherance of a conspiracy to commit Hobbs Act robbery and drug-trafficking crimes, in violation of 18 U.S.C. § 924(c) remains valid in light of Davis, 139 S. Ct. at 2336, which invalidated § 924(c)'s residual clause as unconstitutionally vague.  Relief is only proper if we have "grave doubt" about whether Mr. Martin's conviction rested on the invalid predicate.  See Granda, 990 F.3d at 1293.

We begin with the counts of his conviction.  The indictment alleged that the predicate offenses for the § 924(c) charge in Count 5 were the Hobbs Act robbery offense in Count 1 and the two drug trafficking offenses in Counts 2 and 3.  Both sides agree the Hobbs Act robbery offense (Count 1) can no longer serve as a predicate offense after Davis.  As such, the question in Mr. Martin's case is whether his § 924(c) conviction (Count 5) nevertheless remains valid because it rests on an alternative drug trafficking predicate (Count 2 or 3) left unaffected by Johnson.

7

In Granda, our Circuit answered this question yes. 990 F.3d at 1291. Mr.

Granda argued his § 924(o) conviction should be vacated in light of Davis. Id. at

1280. But this Court determined that this argument was procedurally defaulted and

that, regardless, it failed on the merits because any error was harmless. Id. at

1280–81. The panel concluded there was a fundamental shortcoming "that cut[]

across both the procedural and merits inquiries." Id. at 1280. Namely, the

§ 924(o) predicates were "inextricably intertwined," because they arose out of the

same cocaine robbery scheme. Id. at 1280, 1290. Granda held that the jury could

not have found that Mr. Granda conspired to possess a firearm in furtherance of a

Hobbs Act conspiracy without also finding he conspired to possess a firearm in

furtherance of the attempted Hobbs Act robbery, as well as in furtherance of

conspiring and attempting to possess cocaine with intent to distribute and in

furtherance of attempting a carjacking. See id. Each of these other offenses

remained a valid predicate for the § 924(o) conviction after Davis. Thus, the panel

concluded the overlapping facts considered by the jury in deciding the alternative

predicate offenses rendered any error in the jury instructions harmless. Id. at

1290–91.

That reasoning applies here. Mr. Martin was convicted of conspiring and

attempting to commit an armed robbery of a cocaine stash house, specifically a

§ 924(c) offense (Count 5) predicated on the now-invalid conspiracy to commit

8

Hobbs Act robbery (Count 1) or either one of the still-valid offenses of conspiracy and attempted cocaine trafficking (Counts 2 and 3). Like Mr. Granda, this record shows that Mr. Martin's predicate offenses are also inextricably intertwined because they all arose out of the same cocaine robbery. A jury, on these facts, could not have found that Mr. Martin committed Count 5—carrying a firearm during and in relation to a crime of violence and a drug trafficking crime—in relation to Count 1—Hobbs Act robbery—without also finding that Martin committed Count 5 in relation to Count 2—conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing cocaine— or Count 3—attempt to possess with intent to distribute five kilograms or more of a mixture and substance containing cocaine. Therefore, Mr. Martin has not shown that the § 924(c) conviction necessarily rested on Count 1. The acts for which Mr. Martin was convicted of in Count 1 are inextricably intertwined with two predicates—Counts 2 and 3—that remain valid after Davis.

## IV

Mr. Martin makes several other arguments. None persuade us.

First, he argues Stromberg v. California, 283 U.S. 359, 51 S. Ct. 532 (1931), and its progeny mean a "general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the

insufficient ground." Zant v. Stephens, 462 U.S. 862, 881, 103 S. Ct. 2733, 2745 (1983).

But in Granda, this Court held that Stromberg error is subject to the harmless error standard in Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993). 990 F.3d at 1294. And under harmless error review, "reversal is warranted only when the petitioner suffered 'actual prejudice' from the error." Id.; see also Hedgpeth v. Pulido, 555 U.S. 57, 61, 129 S. Ct. 530, 532 (2008) (per curiam) (holding that "[a]n instructional error arising in the context of multiple theories of guilt" does not "vitiate[] all the jury's findings").

Mr. Martin has not shown that he suffered actual prejudice from the general verdict. As set out above, the predicate offenses for his § 924(c) conviction are inextricably intertwined. Granda, 990 F.3d at 1293. This record demonstrates that Mr. Martin was extensively involved in planning the robbery of a drug stash house containing at least 15 kilograms of cocaine. He repeatedly told co-conspirators he was willing to bring firearms to the robbery and kill anyone offering resistance during the robbery. Given this, Mr. Martin's case is comparable to that in Granda. His still-valid drug trafficking offenses (Counts 2 and 3) are inextricably intertwined with the now-invalid Hobbs Act robbery (Count 1). See id. Mr. Martin carried a firearm during and in relation to the robbery offense that was also intertwined with the drug trafficking offenses. We also note the strength of the

10

evidence against Mr. Martin, including his confession to law enforcement that he planned to conduct a robbery of 15 kilograms of cocaine and brought firearms to commit the robbery.  Given the facts of this case, Mr. Martin has not shown that he suffered actual prejudice from the general verdict for the § 924(c) conviction.  Thus, his Stromberg-based argument fails.[3]

Next, Mr. Martin urges this panel to apply the "categorical approach" to presume his § 924(c) conviction rests on the now-invalid Hobbs Act robbery.  The categorical approach is used "to determine whether a particular offense qualifies under crime-of-violence-type elements clauses such as those found in § 924(c)(3)(A) and in the [Armed Career Criminal Act]."  Granda, 990 F.3d at 1295.  Under the categorical approach, courts "examin[e] only the elements of the statute of conviction, not the specific conduct of a particular offender."  United States v. Oliver, 962 F.3d 1311, 1316 (11th Cir. 2020) (quotation marks omitted).  Courts further "assume that the conviction rested on the 'least of the acts criminalized' by the statute, because to determine upon which of the criminalized acts the conviction rested would violate the categorical approach's command not to analyze the facts underlying the conviction."  Granda, 990 F.3d at 1295 (quotation marks omitted) (quoting Oliver, 962 F.3d at 1316; Moncrieffe v. Holder, 569 U.S.

---

[3] In re Gomez, 830 F.3d 1225 (11th Cir. 2016) (per curiam), does not compel a different conclusion.  In Granda, this Court distinguished Gomez and held that it did not apply to preclude Brecht harmless error inquiry on the merits of a claim like Mr. Granda's.  990 F.3d at 1296.

184, 190–91, 133 S. Ct. 1678, 1684 (2013)).  But in Granda this Court also rejected the argument that the categorical approach prohibits courts from determining that the jury did not rely solely on a now-invalid Hobbs Act conviction as the predicate. Id.  Therefore, this argument is unavailing.

Mr. Martin's next argument, invoking judicial factfinding, fares no better. He argues that concluding the jury relied on still-valid predicates would constitute impermissible judicial factfinding in violation of Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151 (2013).[4]  However, "a judge conducting a Brecht harmless error analysis does not find a fact at all; instead, the judge asks as a matter of law whether there is grave doubt about whether an instruction on an invalid predicate substantially influenced what the jury already found beyond a reasonable doubt."  Granda, 990 F.3d at 1295.  Thus, Mr. Martin's Alleyne argument also fails.

Mr. Martin's arguments not otherwise addressed in this opinion are also unpersuasive.  His § 2255 petition fails on the merits.

**AFFIRMED.**

---

[4] Alleyne applies to findings of fact that increase a mandatory minimum, which must be proven to a jury beyond a reasonable doubt.  570 U.S. at 114–16, 133 S. Ct. at 2162–63.