[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13365

_____

CHARLES EDWARD JONES,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:16-cv-22268-KMM

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

LUCK, Circuit Judge:

A federal prisoner may move to vacate, set aside, or correct his sentence if it violates the Constitution or laws of the United States, exceeds the maximum sentence allowed by law, was entered without jurisdiction, or is otherwise subject to collateral review. 28 U.S.C. § 2255(a); R. Governing § 2255 Proceedings 1(a). But there are strict limits on second or successive motions. This case involves one of those limits.

For the federal courts to have jurisdiction to consider the prisoner's second or successive motion, it must be based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).[1] The issue here is whether the Supreme Court has announced a "new rule of constitutional law" that applies to the residual clause in 18 U.S.C. section 3559—the three-strikes law. We conclude that it hasn't. And because it hasn't, the district court did not have jurisdiction to decide the merits of Charles Jones's second section 2255 motion to vacate his life sentence under the three-strikes law. We therefore vacate the district

---

[1] A second or successive motion can also be based on "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense." § 2255(h)(1). But, because the motion in this case wasn't based on newly discovered evidence, section 2255(h)(1) isn't at issue here.

court's order and remand for Jones's motion to be dismissed for lack of jurisdiction.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 2002, the grand jury indicted Jones for (1) armed bank robbery, in violation of 18 U.S.C. section 2113(a) and (d); (2) knowingly carrying, using, possessing, and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. section 924(c)(1)(A)(iii); and (3) possessing a firearm as a felon, in violation of 18 U.S.C. section 922(g)(1). The government then filed a notice that Jones qualified for the enhanced sentence under section 3559.

Section 3559—known as the three-strikes law—provides that a person convicted of a "serious violent felony" shall receive a mandatory life sentence if he has previously been convicted of "[two] or more serious violent felonies," so long as "each serious violent felony . . . used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony." *Id.* § 3559(c)(1)(A)(i), (B). The government's enhancement notice cited two of Jones's prior convictions as predicate "serious violent felonies": (1) a 1988 Florida conviction for burglary and robbery; and (2) a 2001 Florida conviction for burglary with an assault or battery.

There are three different ways a prior conviction can qualify as a "serious violent felony" under the three-strikes law. First, the three-strikes law's enumerated offenses clause lists specific offenses

that qualify, like robbery, manslaughter, and murder—but not bur-glary. *Id*. § 3559(c)(2)(F)(i). Second, the elements clause makes any offense punishable by at least ten years in prison "that has as an element the use, attempted use, or threatened use of physical force against the person of another" a serious violent felony. *Id*. § 3559(c)(2)(F)(ii). And third, the residual clause provides that any offense punishable by at least ten years in prison "that, by its na-ture, involves a substantial risk that physical force against the per-son of another may be used in the course of committing the of-fense" is a serious violent felony. *Id*. The government's enhance-ment notice didn't say which clause (or clauses) it was relying on.

Jones went to trial in 2003, and the jury convicted him as charged. The presentence investigation report calculated that Jones would've had a sentencing guideline range of 360 months' imprisonment to life but, because he faced a mandatory life sen-tence under the three-strikes law for his armed bank robbery con-viction, the guideline range was life.

The district court sentenced Jones to life in prison for the armed bank robbery, a concurrent 360 months in prison for pos-sessing a firearm as a felon, and a consecutive 120 months for knowingly carrying, using, possessing, and discharging a firearm during and in relation to a crime of violence. The district court also didn't say whether Jones's predicate convictions qualified as serious violent felonies under the three-strikes law's elements clause, resid-ual clause, or both.

Jones appealed his convictions and sentences, and we affirmed. *United States v. Jones*, 90 F. App'x 383 (11th Cir. 2003) (table). He also filed a section 2255 motion in 2005, raising claims that are not relevant here. The district court denied the 2005 motion on the merits, and we denied Jones's request for a certificate of appealability.

That's how Jones's case stood until 2015. That year, the Supreme Court ruled that the residual clause in a different recidivist statute—the Armed Career Criminal Act—was unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591, 597 (2015). Following *Johnson*, Jones filed an application requesting an order authorizing the district court to consider a second section 2255 motion. He sought to argue that, applying *Johnson*, the three-strikes law's residual clause was also unconstitutionally vague. We granted Jones's application as to this claim.

Jones then filed in the district court a second section 2255 motion—the motion at issue here. He argued that, because the three-strikes law's residual clause was "very similar" to the residual clause in the Armed Career Criminal Act, it was "likewise unconstitutional in light of *Johnson*." And, because his prior conviction for burglary with an assault or battery conviction didn't satisfy the three-strikes law's elements or enumerated offenses clauses, it wasn't a valid predicate offense and he didn't qualify for the enhanced life sentence.

In November 2017, the district court denied Jones's motion. It concluded that, because we said in *Ovalles v. United States*, 861

F.3d 1257 (11th Cir. 2017), that the residual clause in 18 U.S.C. section 924(c) wasn't unconstitutionally vague, the same logic applied to the three-strikes law given that the two statutes and their residual clauses were similar.[2] The district court granted Jones a certificate of appealability as to whether *Johnson* applied to the three-strikes law's residual clause.

Jones appealed the denial of his motion. But, while the appeal was pending, the government moved to remand his case based on *Beeman v. United States*, 871 F.3d 1215 (11th Cir. 2017).[3] The government argued that "the existing record d[id] not indicate how or why Jones's original sentencing court classified either of his two predicate offenses as 'serious violent felonies' for purposes of the three-strikes enhancement," and a remand was proper because "[t]he district court [wa]s best-positioned to address that question in the first instance." We granted the government's motion and

---

[2] In *Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018) (en banc) (*Ovalles II*), we concluded that section 924(c)(3)(B) required a conduct-based approach to determine whether an offense was a crime of violence within the meaning of the statute and, therefore, the statute wasn't unconstitutionally vague. *Id.* at 1252. Our decision in *Ovalles II* was overruled by the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319 (2019), which ruled that section 924(c)(3)(B) required a categorical approach, rather than a conduct-based approach, and, therefore, was unconstitutionally vague. *Id.* at 2327, 2336.

[3] In *Beeman*, we concluded (among other things) that a prisoner challenging (via section 2255) the enhancement of his sentence under the Armed Career Criminal Act had the burden of proving "that it was more likely than not" that "he in fact was sentenced as an armed career criminal under the residual clause." 871 F.3d at 1225.

remanded for the district court to reconsider Jones's second section 2255 motion under the *Beeman* standard.

On remand, Jones filed a brief addressing *Beeman*. He argued that the enhancement of his sentence under the three-strikes law was based solely on the residual clause. Jones maintained that his 2001 conviction for burglary with an assault or battery could qualify as a predicate offense only under the three-strikes law's residual clause because, at the time of his sentencing, a burglary conviction didn't qualify under either the enumerated offenses or elements clauses.

The government responded that Jones couldn't meet his burden under *Beeman* because the record was silent as to which clause the district court relied on to conclude that his burglary with an assault or battery conviction was a predicate offense, and "there was a viable or possible avenue" for the district court to apply the three-strikes law's elements clause at the time of Jones's sentencing. This was so, the government argued, because Jones's burglary conviction had an "accompanying assault or battery," and the district court "may have concluded that both of those offenses had as an element the use, attempted use, or threatened use of physical force against the victim," satisfying the statute's elements clause.

The district court entered an order again denying Jones's second section 2255 motion. The district court found that Jones met his burden under *Beeman* because—based on its interpretation of our caselaw at the time of Jones's sentencing—burglary "was a 'serious violent felony' under *only* the residual clause." But the

district court declined to declare the three-strikes law's residual clause unconstitutionally vague. The district court said that no court of appeals had applied the Supreme Court's decisions in *Johnson*, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), or *United States v. Davis*, 139 S. Ct. 2319 (2019), to the statute's residual clause and it would not do so without controlling precedent. Because this issue was "unsettled," the district court again granted Jones a certificate of appealability as to whether the three-strikes law's residual clause was unconstitutionally vague.

This is Jones's appeal. Rather than continue to oppose Jones's motion, the government now concedes that the three-strikes law's residual clause is unconstitutionally vague. The government doesn't argue an alternative basis for affirmance and instead maintains that we should reverse the denial of Jones's section 2255 motion. We appointed amicus curiae counsel to defend the district court's judgment.

## STANDARD OF REVIEW

"In a proceeding on a motion to vacate, set aside, or correct sentence, we review the district court's factual findings for clear error and legal determinations de novo." *United States v. Pickett*, 916 F.3d 960, 964 (11th Cir. 2019) (citing *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008)). Although neither the government nor the amicus curiae raised the issue, we're obligated to address the district court's jurisdiction under section 2255(h)—a legal question we consider de novo—before reaching the merits of Jones's

motion.  *See Randolph v. United States*, 904 F.3d 962, 964 (11th Cir. 2018); *Granda v. United States*, 990 F.3d 1272, 1283 (11th Cir. 2021).

## DISCUSSION

Jones and the amicus curiae focus their briefs on the merits of Jones's second section 2255 motion—namely, whether the three-strikes law's residual clause is unconstitutionally vague and, if so, whether Jones met his burden under *Beeman*.  But we can't address those issues without first resolving a threshold question: whether the district court had jurisdiction to consider Jones's second section 2255 motion.

We conclude that the district court lacked jurisdiction because Jones's motion failed to satisfy the requirements of 28 U.S.C. section 2255(h)(2).  We break our analysis into five parts.  First, we discuss the jurisdictional requirements of section 2255(h)(2).  Second, we review the constitutional rules announced by the Supreme Court in *Johnson*, *Dimaya*, and *Davis*.  Third, we consider how we've interpreted section 2255(h)(2)'s new-constitutional-rule requirement and, in particular, how, after *Johnson*, we've applied that requirement to motions challenging other residual clauses.  Fourth, we apply these principles to Jones's case and conclude that he failed to establish that his second section 2255 motion met the new-constitutional-rule requirement of section 2255(h)(2).  And fifth, we address some of the points raised by the dissenting opinion.

*Second or Successive Section 2255 Motions*

We begin with the text of section 2255. Section 2255 allows a federal prisoner to move "to vacate, set aside[,] or correct [his] sentence." § 2255(a). A prisoner can challenge his sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the sentence] is otherwise subject to collateral attack." *Id.*

But section 2255 strictly limits a prisoner's ability to file a second or successive motion. The statute provides that "[a] second or successive motion must be certified as provided in [28 U.S.C.] section 2244 by a panel of the appropriate court of appeals to contain . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* § 2255(h)(2). Where a prisoner's second or successive motion is based on a new rule of constitutional law, the prisoner has a one-year limitations period to file the motion, running from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* § 2255(f)(3).

And section "2255(h) incorporates the whole range of procedures and limitations set out in [section] 2244(b)(1), (b)(3), and (b)(4)." *In re Bradford*, 830 F.3d 1273, 1276 (11th Cir. 2016). So section 2255(h) doesn't only "incorporate[] the requirement in

[section] 2244(b)(3)(A) that a[ prisoner] must obtain authorization from this Court in order to file a [second or] successive [section] 2255 motion." *Id.*; *see also* § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the [prisoner] shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."). Section 2255(h) also incorporates section 2244(b)(3)(C)'s requirement that a prisoner, at the appeals-court authorization stage, "make a prima facie showing that the application" to file a second or successive motion "satisfies the other requirements contained in section 2244(b)." *Bradford*, 830 F.3d at 1276 (cleaned up); *see also* § 2244(b)(3)(C) ("The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection."). That includes a prima facie showing that the prisoner's motion would satisfy section 2255(h)(2)'s "new rule of constitutional law" requirement. *See In re Pinder*, 824 F.3d 977, 978–79 (11th Cir. 2016).

But this prima facie showing only gets a prisoner through the district court's door. That is, although a prisoner can file a second or successive section 2255 motion after we've authorized it, the district court owes no "deference to our order authorizing" the prisoner to file that motion. *Randolph*, 904 F.3d at 965. Instead, "the district court has jurisdiction to determine for itself if the motion relies on 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *Id.* at 964 (quoting § 2255(h)(2)). At that point,

"the district court is to decide the section 2255(h) issues fresh, or in the legal vernacular, de novo." *Id.* at 965 (cleaned up); *see also In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (explaining that, because our conclusion that a prisoner has "made a prima facie showing that his application satisfies sections 2255(h) and 2244(b)(3)(C)" is "a limited determination," the district court must decide for itself whether the prisoner "has established the statutory requirements for filing a second or successive motion" (cleaned up)).

Importantly, section 2255(h)(2)'s requirements are jurisdictional. So if—after fresh consideration of the section 2255(h) issues—the district court decides the prisoner's "motion meets those requirements, [then] the district court has jurisdiction to decide whether any relief is due under the motion"; conversely, "if the motion does not meet the [section] 2255(h) requirements, [then] the court lacks jurisdiction to decide whether the motion has any merit." *Randolph*, 904 F.3d at 964. If the section 2255(h) requirements are not met, the district court must dismiss the motion for lack of jurisdiction. *See Bradford*, 830 F.3d at 1276 (explaining that, in the context of second or successive section 2255 motions, we have adopted the decision in *Jordan v. Secretary, Department of Corrections*, 485 F.3d 1351 (11th Cir. 2007), "which held that [section] 2244(b)(4) requires a district court to dismiss a claim that this Court has authorized . . . if that claim fails to satisfy the requirements of [section] 2244").

Just as the district court has to take a fresh look at section 2255(h)'s jurisdictional requirements even after our order

authorizing a second or successive motion, we too must consider anew the jurisdictional requirements on appeal. Indeed, "[a]fter the district court looks at the section 2255(h) requirements de novo, our first hard look at whether the section 2255(h) requirements actually have been met will come, if at all, on appeal from the district court's decision." *In re Moore*, 830 F.3d 1268, 1271 (11th Cir. 2016) (cleaned up).

In short, Jones's second section 2255 motion could only be heard by the district court if it was based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." § 2255(h)(2). If Jones failed to meet those requirements, then the district court had to dismiss his motion for lack of jurisdiction. *See Randolph*, 904 F.3d at 964; *Bradford*, 830 F.3d at 1276. Although the district court didn't expressly consider whether Jones's motion satisfied section 2255(h)(2), we must now take a "hard look" at whether section 2255(h)(2)'s requirements were met here. *See Moore*, 830 F.3d at 1271 (citation omitted).

*The Decisions in* Johnson, Dimaya, *and* Davis

But, before we apply section 2255(h)(2) to Jones's case, it's helpful to review the cases he relies on to satisfy the new-constitutional-rule requirement. Jones contends that *Johnson*, *Dimaya*, and *Davis*—which found the residual clauses in the Armed Career Criminal Act, 18 U.S.C. section 16(b), and 18 U.S.C. section 924(c), unconstitutionally vague—announced new rules of constitutional

law satisfying section 2255(h)(2) for purposes of his challenge to the three-strikes law's residual clause.

### *Johnson*

*Johnson* involved 18 U.S.C. section 924(e)(2)(B)(ii), the Armed Career Criminal Act's residual clause. This enhancement statute applied to a person with three or more prior convictions for a "serious drug offense" or "violent felony" who violated 18 U.S.C. section 922(g) by unlawfully possessing a firearm. § 924(e)(1). The Act's residual clause defined "violent felony" as any felony that "involve[d] conduct that present[ed] a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(ii).

The Supreme Court had, since 1990, "use[d] a framework known as the categorical approach" to determine whether a conviction fell within the Act's residual clause. *Johnson*, 576 U.S. at 596 (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)). "Under the categorical approach, a court assesse[d] whether a crime qualifie[d] as a violent felony in terms of how the law define[d] the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* (cleaned up). Thus, deciding whether a crime fell within the residual clause "require[d] a court to picture the kind of conduct that the crime involve[d] in 'the ordinary case,' and to judge whether that abstraction present[ed] a serious potential risk of physical injury." *Id.* (citation omitted).

The *Johnson* Court ruled that the "ordinary case" approach required by the residual clause made it unconstitutionally vague. *Id.* at 597. This was because, the Supreme Court explained, "the

residual clause le[ft both] grave uncertainty about how to estimate the risk posed by a crime"—because "[i]t tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements"—as well as "uncertainty about how much risk it t[ook] for a crime to qualify as a violent felony." *Id.* at 597–98. Because judicial speculation about both the risk posed by an offense's "ordinary case" and the quantum of risk necessary "for a crime to qualify as a violent felony" was unpredictable and arbitrary, the residual clause violated due process.[4] *Id.*

### *Dimaya*

In *Dimaya*, the Supreme Court considered the application of *Johnson* to 18 U.S.C. section 16(b), which defined "crime of violence" for other federal statutes—including, in Dimaya's case, as incorporated into the Immigration and Naturalization Act's definition of "aggravated felony" in 8 U.S.C. section 1101(a)(43)(F). 138 S. Ct. at 1211. Section 16(b)'s residual clause defined "crime of violence" as any felony offense "that, by its nature, involve[d] a substantial risk that physical force against the person or property of another m[ight] be used in the course of committing the offense." § 16(b). Like the Armed Career Criminal Act's residual clause, courts used the categorical approach to determine whether "a conviction posed the substantial risk that [section] 16(b) demand[ed]."

---

[4] In *Welch v. United States*, 578 U.S. 120 (2016), the Supreme Court concluded that *Johnson* had announced a new constitutional rule that applied retroactively. *Id.* at 135.

*Dimaya*, 138 S. Ct. at 1211 (citation omitted). Thus, this approach to section 16(b) "require[d] a court to ask whether 'the ordinary case' of an offense pose[d] the requisite risk." *Id.* (citation omitted).

The *Dimaya* Court ruled that, under a "straightforward application" of *Johnson*, section 16(b)'s residual clause was unconstitutionally vague. *Id.* at 1213–16. Like the Armed Career Criminal Act's residual clause, section 16(b)'s residual clause "call[ed] for a court to identify a crime's 'ordinary case' in order to measure the crime's risk." *Id.* at 1215. And like the Armed Career Criminal Act's residual clause—with its "serious potential risk of physical injury" threshold—the section 16(b) residual clause's "substantial risk [of] physical force" threshold left district courts facing "uncertainty about the level of risk that ma[de] a crime 'violent.'" *Id.* Section 16(b)'s "formulation," the *Dimaya* Court said, wasn't "any more determinate than the [Armed Career Criminal Act's]." *Id.* The approach called for by section 16(b) therefore failed to "work in a way consistent with due process." *Id.* at 1216.

### *Davis*

Finally, in *Davis*, the Supreme Court addressed the constitutionality of 18 U.S.C. section 924(c)'s residual clause. This statute applied to defendants who used a firearm in connection with certain federal crimes. § 924(c)(1)(A). Its residual clause encompassed felonies "that[,] by [their] nature, involve[d] a substantial risk that physical force against the person or property of another m[ight] be used in the course of committing the offense." *Id.* § 924(c)(3)(B).

The Supreme Court found this residual clause unconstitutionally vague too. *Davis*, 139 S. Ct. at 2336.

The *Davis* Court concluded that by looking at the "nature" of the predicate conviction "the statutory text command[ed] the categorical approach." *Id.* at 2327–28. *Davis* also observed that section 924(c)'s residual clause was "almost identical to the language of [section] 16(b), . . . [a]nd we normally presume that the same language in related statutes carries a consistent meaning." *Id.* at 2329. Because section 924(c)(3)(B) required the categorical approach, rather than the "case-specific approach" the government advocated for, the *Davis* Court concluded that the reasoning of *Johnson* and *Dimaya* applied to its residual clause. *Id.* at 2326–27.

### Applying The New-Constitutional-Rule Requirement *After* Johnson

We turn now to how we've interpreted and applied section 2255(h)(2)'s new-constitutional-rule requirement, paying particular attention to how we've applied the requirement to second or successive section 2255 motions invoking *Johnson* to challenge other residual clauses. Those cases, it turns out, show how we should approach Jones's motion invoking *Johnson* (and *Dimaya* and *Davis*) to challenge the three-strikes law's residual clause.

### The New-Constitutional-Rule Requirement

We begin, briefly, with some foundational principles about "new rules." For section 2255(h)(2) purposes, only the Supreme Court can announce a new rule of constitutional law. *See In re Bowles*, 935 F.3d 1210, 1219 (11th Cir. 2019) ("The existence of a

'new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court,' depends solely on Supreme Court decisions . . . ."); *In re Wright*, 942 F.3d 1063, 1065 (11th Cir. 2019) (denying application to file a second section 2255 motion raising a double jeopardy claim partly because the cases the prisoner relied on "were decided by courts other than the Supreme Court"); *see also Woods v. Warden, Holman Corr. Facility*, 951 F.3d 1296, 1298 (11th Cir. 2020) ("[S]ection 2244(b) allows us to authorize the filing of a second petition only when the Supreme Court recognizes a 'new rule of constitutional law . . . .'").

"'[A] case announces a new rule when it breaks new ground or imposes a new obligation' on the government." *In re Hammoud*, 931 F.3d 1032, 1037 (11th Cir. 2019) (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)). "A rule is 'new' if the result of the case announcing the rule 'was not dictated by precedent existing at the time the defendant's conviction became final.'" *Id.* (quoting *Teague*, 489 U.S. at 301). "[E]ven where a court applies an already existing rule, its decision may create a new rule by applying the existing rule in a new setting, thereby extending the rule 'in a manner that was not dictated by [prior] precedent.'" *Id.* at 1038 (quoting *Stringer v. Black*, 503 U.S. 222, 228 (1992)).

Jones argues that the "clear rule of unconstitutional vagueness" announced in *Johnson* (and "repeated and applied in *Dimaya* and *Davis*") transcends the statutes at issue in those cases and applies to the three-strikes law's residual clause. But we've made

clear, in two lines of cases, that the new rule announced in *Johnson* did not necessarily apply to other, almost-identical residual clauses.

Post-*Johnson* Challenges to the
Career Offender Guideline's Residual Clause

The first line of cases is the application of *Johnson* to the career offender sentencing guideline's residual clause. A defendant is a career offender for purposes of the sentencing guidelines where the underlying "offense of conviction is a felony that is either a crime of violence or a controlled substance offense" and "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (2021). Prior to August 2016, the guidelines defined "crime of violence" to include any felony "involv[ing] conduct that present[ed] a serious potential risk of physical injury to another"—language identical to the Armed Career Criminal Act's residual clause. *Compare id.* § 4B1.2(a) (2015), *with* § 924(e)(2)(B)(ii).[5]

In *In re Griffin*, 823 F.3d 1350 (11th Cir. 2016), the prisoner sought leave to file a second section 2255 motion raising a claim that, under *Johnson*, "his sentence was improperly enhanced under the career offender guideline." *Id.* at 1352. We denied the application. *Id.* at 1356. We began by explaining that "it is not enough for a federal prisoner to simply identify *Johnson* and the residual clause

---

[5] The sentencing commission removed the residual clause from guideline section 4B1.2(a) after *Johnson*. *See* Supplement to 2015 Guidelines Manual, § 4B1.2(a) (2016).

as the basis for the claim or claims he seeks to raise in a second or successive [section] 2255 motion"; rather, "he also must show that he was sentenced under the residual clause in the [Armed Career Criminal Act] and that he falls within the scope of the new substantive rule announced in *Johnson*." *Id.* at 1354. We then concluded that the prisoner failed to make a prima facie showing that his claim satisfied section 2255(h)(2)'s requirements. *Id.* at 1354–56.

The prisoner, we said, "was not sentenced under the [Armed Career Criminal Act] or beyond the statutory maximum for his drug crime." *Id.* at 1354. Instead, his case "involve[d] only the career offender guideline." *Id.* And, more importantly, even if *Johnson* applied to the sentencing guidelines, that still would not satisfy section 2255(h)(2)'s requirements in the prisoner's case. *Id.* at 1355. This was because, we explained, "[a] rule that the [sentencing g]uidelines must satisfy due process vagueness standards . . . differs fundamentally and qualitatively from a holding that a particular criminal statute or the [Armed Career Criminal Act] sentencing statute—that increases the statutory maximum penalty for the underlying new crime—is substantively vague." *Id.* at 1356.

We expanded on *Griffin*'s reasoning in *In re Anderson*, 829 F.3d 1290 (11th Cir. 2016). The *Anderson* prisoner also sought to challenge, in a second section 2255 motion, the sentencing guidelines' career offender provision "based on the new rule of constitutional law announced in *Johnson*." *Id.* at 1291. We denied the application. *Id.* at 1292. We recognized that the Supreme Court had granted certiorari in *Beckles v. United States*, 136 S. Ct. 2510 (2016),

a case presenting the question whether the residual clause in the career offender guideline was unconstitutionally vague. *Anderson*, 829 F.3d at 1292–93. "[I]f the Supreme Court holds in *Beckles*, which is a [section] 2255 case, that the [section] 4B1.2(a)(2) residual clause is unconstitutional," we explained, then "that decision will establish 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *Id.* at 1293 (quoting § 2255(h)(2)). "If that happens, [the prisoner] will be able to file a new application seeking certification to file a second or successive [section] 2255 motion based not on *Johnson* but on *Beckles*." *Id.*; *see also Bradford*, 830 F.3d at 1279 ("If the Supreme Court decides in *Beckles*, or some other decision, that the residual clause of [section] 4B1.2(a)(2) of the career offender provisions of the guidelines is unconstitutional, [the prisoner] will have a new claim under [section] 2255(h)(2) for which he can then file an application to file a second or successive [section] 2255 motion." But, we said, "[i]t will not be a *Johnson/Welch* claim"; it will be "a *Beckles* claim." (footnote and emphasis omitted)).[6]

Post-*Johnson* Challenges to Section 924(c)'s Residual Clause

The second line of cases is *Johnson*'s application to section 924(c)'s residual clause. We begin with *In re Smith*, 829 F.3d 1276

---

[6] In *Beckles v. United States*, the Supreme Court concluded that the advisory sentencing guidelines "are not subject to vagueness challenges under the Due Process Clause." 580 U.S. 256, 259 (2017).

(11th Cir. 2016), where we considered—following the Supreme Court's decision in *Johnson* but before its decision in *Davis*—a prisoner's application for leave to file a second section 2255 motion challenging his section 924(c) conviction. *Id.* at 1277–78. The *Smith* prisoner "assert[ed] that his claim relie[d] upon the new rule of constitutional law announced in *Johnson.*" *Id.* at 1277. We were skeptical about the application of *Johnson*'s new rule to a section 924(c) conviction in the context of a second section 2255 motion. "*Johnson* rendered the residual clause of the [Armed Career Criminal Act] invalid," but "[i]t said nothing about the validity of the definition of a crime of violence found in [section] 924(c)(3)." *Id.* at 1278. And it was "not self-evident," we said, "that the rule promulgated in *Johnson* . . . mean[t] that [section] 924(c)'s residual clause must likewise suffer the same [constitutional] fate" as the Armed Career Criminal Act's. *Id.* at 1279. Rather, we observed that "there [we]re good reasons to question an argument that *Johnson* mandate[d] the invalidation of [section] 924(c)'s particular residual clause." *Id.* For example, "an analysis of a statute's vagueness is necessarily dependent on the particular words used and, while similar, the language in the two statutes [wa]s not the same." *Id.*

Then, in *In re Garrett*, 908 F.3d 686 (11th Cir. 2018), *abrogated on other grounds by Davis*, 139 S. Ct. 2319, we concluded that "neither *Johnson* nor *Dimaya* supplie[d] any 'rule of constitutional law'—'new' or old, 'retroactive' or nonretroactive, 'previously unavailable' or otherwise—that c[ould] support a vagueness-based challenge to the residual clause of section 924(c)." *Id.* at 689. We reached this conclusion based on *Ovalles II*, which had interpreted

section 924(c) to require "a conduct-based approach that accounted[ed] for the actual, real-world facts of the crime's commission, rather than a categorical approach." *Id.* (citation omitted). We recognized that our pre-*Ovalles* cases in effect at the time of the *Garrett* prisoner's sentencing interpreted section 924(c) to require a categorical approach—but this "ma[d]e no difference." *Id.* "[E]ven if we construed [the prisoner's] claim as a challenge to the use of a categorical approach by his sentencing court," we said, "[t]he substitution of one interpretation of a statute for another never amounts to 'a new rule of *constitutional* law,' not even when it comes from the Supreme Court." *Id.* (citations omitted).

Although the Supreme Court's decision in *Davis* abrogated *Garrett* to the extent it ruled that section 924(c)'s residual clause wasn't unconstitutionally vague, we have since reaffirmed *Garrett*'s conclusion that *Johnson* and *Davis* announced different new constitutional rules for purposes of section 2255(h)(2). *See Hammoud*, 931 F.3d at 1036–38. In *Hammoud*, the prisoner sought leave—prior to *Davis*—to file a second or successive section 2255 motion, arguing that his section 924(c) conviction was unconstitutional under the new rule of constitutional law announced in *Johnson* and *Dimaya*. *Id.* at 1036. We denied his application "under our then-binding precedent in" *Ovalles II*. *Id.* Following *Davis*—which overruled *Ovalles II*—the *Hammoud* prisoner filed another application for leave to file a second or successive section 2255 motion, arguing that his section 924(c) conviction was invalid "in light of the new rule of constitutional law set forth in *Davis*, *Dimaya*, and *Johnson*." *Id.*

We expressly rejected the prisoner's argument that *Johnson*'s or *Dimaya*'s rule supported his claim. The prisoner's "reliance on *Dimaya* and *Johnson* to support his [section] 924(c) challenge [was] misplaced," we said, "as those cases involved 18 U.S.C. [section] 16(b) and the [Armed Career Criminal Act], respectively, not [section] 924(c)." *Id.* at 1036 n.1. Instead, the *Hammoud* prisoner's claim was "best described as a *Davis* claim." *Id.*

The *Hammoud* court then addressed "whether *Davis* announced a new rule of constitutional law" for section 2255(h)(2) purposes. *Id.* at 1036–37. It did. We explained that *Davis*'s rule was new "because it extended *Johnson* and *Dimaya* to a new statute and context." *Id.* at 1038. "*Davis*, like *Johnson* before it, announced a new substantive rule," we said, "because, just as *Johnson* narrowed the scope of the Armed Career Criminal Act, *Davis* narrowed the scope of section 924(c) by interpreting its terms, specifically, the term crime of violence." *Id.* (cleaned up). In other words, "*Davis* restricted for the first time the class of persons [section] 924(c) could punish and, thus, the government's ability to impose punishments on defendants under that statute." *Id.*

And because *Davis*'s new constitutional rule was different than the rules announced by *Johnson* and *Dimaya*, the *Hammoud* court concluded that the prisoner's application wasn't barred by our decision in *In re Baptiste*, 828 F.3d 1337 (11th Cir. 2016). *Hammoud*, 931 F.3d at 1039–40. In *Baptiste*, we found that 28 U.S.C. section 2244(b)(1), which prohibits state prisoners from presenting repeat claims in a second or successive section 2254 habeas corpus

petition, also barred federal prisoners from raising claims in a second or successive section 2255 motion that were presented in a prior application. 828 F.3d at 1339–40. And in *Bradford*, we said that section 2244(b)(1)—and by extension *Baptiste*—created a jurisdictional bar to claims that were raised and rejected in a prior application. 830 F.3d at 1277–79. But the *Hammoud* court concluded that *Baptiste*'s bar didn't apply to the prisoner's successive application raising a *Davis* claim, even though his prior application sought to challenge his section 924(c) conviction under *Johnson* and *Dimaya*. 931 F.3d at 1039–40. *Baptiste*'s bar didn't apply, we explained, because "*Davis* announced a new substantive rule of constitutional law in its own right, separate and apart from (albeit primarily based on) *Johnson* and *Dimaya*. Thus, [the prisoner's] present claim is a new *Davis* claim, not a *Johnson* or *Dimaya* claim, and is, therefore, not barred by *In re Baptiste*." *Id.* at 1040; *see also In re Navarro*, 931 F.3d 1298, 1301 (11th Cir. 2019) ("[The prisoner's] current application seeks to assert new *Davis* claims, not *Dimaya* claims, and is not barred by *In re Baptiste*.").

⋆     ⋆     ⋆

Jones's case isn't the first time we've been asked to apply *Johnson* to other residual clauses. The new rule in *Johnson* didn't extend to an identical residual clause in the sentencing guidelines. *Griffin*, 823 F.3d at 1356; *Anderson*, 829 F.3d at 1292. Instead, if the Supreme Court in *Beckles* extended *Johnson*'s reasoning to the career offender guideline's residual clause, that would've constituted a "new rule of constitutional law" for section 2255(h) purposes.

*Anderson*, 829 F.3d at 1293. And the new rule in *Johnson* didn't apply to the residual clause in section 924(c). *Smith*, 829 F.3d at 1278–79; *Garrett*, 908 F.3d at 689; *Hammoud*, 931 F.3d at 1036 n.1. Instead, because the Court "extended *Johnson* and *Dimaya* to a new statute and context"—namely, section 924(c)'s residual clause—*Davis* announced a separate new constitutional rule for purposes of section 2255(h)(2). *Hammoud*, 931 F.3d at 1038. That's why *Baptiste* doesn't bar *Davis*-based section 924(c)-conviction challenges previously asserted as *Johnson* or *Dimaya* claims. *Id.* at 1039–40; *accord Navarro*, 931 F.3d at 1301.

### *Jones Did Not Satisfy the New-Constitutional-Rule Requirement*

With these principles in mind, we now turn to the threshold jurisdictional question raised by this case: whether Jones's second section 2255 motion relied on a "new rule of constitutional law" announced by the Supreme Court. § 2255(h)(2). Jones's second section 2255 motion relied on *Johnson* to satisfy section 2255(h)(2)'s new-constitutional-rule requirement. But it was "not enough for [Jones] to simply identify *Johnson* and the residual clause as the basis for the claim" he sought "to raise in a second or successive [section] 2255 motion." *See Griffin*, 823 F.3d at 1354. Jones also had to "show that he was sentenced under the residual clause in the [Armed Career Criminal Act] and that he falls within the scope of the new substantive rule announced in *Johnson*." *See id.* Jones failed to make this showing. He wasn't sentenced under the Act's residual clause, and he doesn't fall within the scope of *Johnson*'s new rule.

To be sure, Jones's three-strikes law claim resembles a *Johnson* claim: both claims assert that the residual clause of a recidivist statute is unconstitutionally vague. But that doesn't mean Jones can rely on *Johnson*—or *Dimaya* or *Davis*, as he asserted on appeal—to supply the new rule of constitutional law he needs to satisfy section 2255(h)(2). Our decisions in *Griffin*, *Anderson*, and *Hammoud* demonstrate why.

If the new rule announced in *Johnson* applied to every other similarly worded residual clause, we wouldn't have said in *Griffin* that a vagueness challenge to the career offender guideline's residual clause "differ[ed] fundamentally and qualitatively" from a *Johnson* claim. 823 F.3d at 1356. We wouldn't have said in *Anderson* that a vagueness challenge to the residual clause in the career offender guideline was a (hypothetical) *Beckles* claim rather than a *Johnson* claim. 829 F.3d at 1293. And there would've been no need for *Hammoud* to consider whether *Davis* had announced a new rule of constitutional law made retroactively applicable to cases on collateral review by the Supreme Court—we would've simply applied *Johnson* and *Dimaya* to the *Hammoud* prisoner's section 924(c) claim. But we couldn't simply apply *Johnson* to the *Hammoud* prisoner's section 924(c) claim, because "[his] present claim [was] best described as a *Davis* claim." *Hammoud*, 931 F.3d at 1036 n.1. His claim wasn't a *Johnson* claim despite their similarities.

Rather than apply *Johnson*'s new rule to the *Hammoud* prisoner's *Davis* claim, we instead "conclude[d] that *Davis*, like *Johnson* before it, announced a new substantive rule." *Id.* at 1038. And this

rule, which narrowed the class of people eligible for conviction under section 924(c), was new "because it extended *Johnson* and *Dimaya* to a new statute and context." *Id.* Any attempt in a second or successive section 2255 motion to apply the rule announced in *Johnson*, *Dimaya*, or *Davis* to a different statute and context is "misplaced." *Id.* at 1036 n.1.

That's precisely what Jones seeks to do here with the three-strikes law. He doesn't rely on a decision from the Supreme Court announcing a new rule that the three-strikes law's residual clause is unconstitutionally vague. (There isn't one.) Rather, Jones maintains that this rule flows from *Johnson*. We rejected that reasoning in *Griffin*, *Anderson*, and *Hammoud*, and we reject it here too.

The dissenting opinion gives three reasons why *Hammoud* doesn't apply to Jones's claim. First, the dissenting opinion explains, *Hammoud* didn't "say[] anything about whether the *Johnson* rule applies to other statutes." But it did. *Hammoud* was not the prisoner's first time seeking leave to file a successive section 2255 motion. He filed an application a year earlier arguing that the residual clause in section 924(c) was unconstitutional in light *Johnson* and *Dimaya*. *Hammoud*, 931 F.3d at 1036. We denied the earlier application because, pre-*Davis*, "neither *Johnson* nor *Dimaya* could support a vagueness-based challenge to" the section 924(c) residual clause. *Id.* The prisoner's "reliance on *Dimaya* and *Johnson* to support his [section] 924(c) challenge [wa]s misplaced," we said, because "those cases involved [section] 16(b) and the [Armed Career Criminal Act], respectively, not [section] 924(c)." *Id.* at 1036 n.1.

If *Johnson* applied to the other recidivist statutes, as the dissenting opinion claims, then we would have granted the *Hammoud* prisoner's initial application and he wouldn't have needed to re-apply after *Davis*. But he did need to re-apply because, without *Davis*, *Johnson* and *Dimaya* did not support a vagueness-based challenge to the almost identical residual clause in section 924(c). Because the new rule in *Johnson* didn't apply to other statutes, the *Hammoud* prisoner needed *Davis* to meet the new rule requirement in section 2255(h)(2).

Second, the dissenting opinion says that *Hammoud* is "distinguishable" because it relied on the fact that "*Davis* extended *Johnson* to a new *context* (i.e., a non-recidivist statute)." *Hammoud*, the dissenting opinion explains, found that *Davis* was a new rule because "[t]he applicability of *Johnson* to [section] 924(c), a non-recidivist statute, was a closer question" than *Johnson*'s applicability to the three-strikes law, another recidivist statute. But the dissenting opinion's premise is off. Section 924(c) is not non-recidivist. It, like the Armed Career Criminal Act, has recidivist provisions. The Supreme Court itself has said so several times. *See, e.g.*, *United States v. O'Brien*, 560 U.S. 218, 235 (2010) ("The current structure of [section] 924(c) is more favorable to that interpretation . . . particularly because the machinegun provision is now positioned between the sentencing factors provided in (A)(ii) and (iii) and the *recidivist* provisions in (C)(i) and (ii), which are typically sentencing factors as well. (citation omitted and emphasis added)); *Castillo v. United States*, 530 U.S. 120, 125 (2000) ("The next three sentences of [section] 924(c)(1) . . . refer directly to sentencing: the first to *recidivism*,

the second to concurrent sentences, the third to parole. (emphasis added)).

Third, the dissenting opinion says that, unlike for section 924(c), where "[r]easonable jurists . . . debate[d] whether *Johnson* dictated the demise" of the residual clause, "[h]ere . . . there is simply no credible argument that the rule set forth in *Johnson* could spare" the three-strikes law's residual clause. In support, the dissenting opinion cites the government's concession to Congress that there's *"no reasonable basis"* to distinguish the three-strikes law's residual clause from section 924(c)'s residual clause, which the Supreme Court found unconstitutionally vague in *Davis*.

But we've been down this road before. In *Beckles*, another post-*Johnson* challenge, the government "agree[d] with [the] petitioner that the [g]uidelines [we]re subject to vagueness challenges." 580 U.S. at 261. So the Supreme Court appointed "amicus curiae to argue the contrary position." *Id.* at 261–62. The *Beckles* Court rejected the aligned position of the government and the petitioner and adopted the amicus curiae's argument "that the advisory [g]uidelines [we]re not subject to vagueness challenges under the Due Process Clause." *Id.* at 258. The Supreme Court didn't read the government's confession of error to mean there was no credible argument that *Johnson* didn't apply to the career offender guideline's residual clause. That's because "[a] confession of error on the part of the United States does not relieve th[e] [c]ourt of the performance of the judicial function." *Gibson v. United States*, 329 U.S. 338, 344 n.9 (1946) (quotation omitted).

Here, as in *Beckles*, after the government's confession, we appointed amicus curiae to defend the district court's judgment that the three-strikes law's residual clause was not unconstitutionally vague. And, as in *Beckles*, amicus counsel "ably discharged his responsibilities." *See* 580 U.S. at 262. Amicus counsel argued that *Johnson* didn't apply to the three-strikes law's residual clause because the Armed Career Criminal Act's residual clause was "materially differe[nt]" in two key ways. First, the Act's residual clause was vague because it included conduct that had a "potential risk of physical injury," while the three-strikes law was limited to offenses that involved a "substantial risk that physical force . . . may be used." The *Johnson* Court "found the term 'potential risk' to be troublesome, because 'assessing "potential risk" seemingly requires the judge to imagine how the idealized ordinary case of the crime subsequently plays out.'"

Second, the Act's enumerated clause "listed a mere handful of examples . . . that were not inherently violent or did not inherently present a risk of physical injury," while the three-strikes law's "enumerated clause lists truly violent crimes that do provide guidance to and notice of which crimes fall within" the residual clause. The dissenting opinion's chart, which narrowly focuses on a small part of the Armed Career Criminal Act and section 924(c), cuts out the important differences between those statutes and the three-strikes law. But that's not how we read statutes. A "reasonable statutory interpretation must account for both the specific context in which . . . language is used and the broader context of the statute as a whole." *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014)

(omission in original, quotations omitted). The omissions in the dissenting opinion's chart cut out the necessary context.

To be sure, we don't know whether amicus counsel's arguments will carry the day when this issue is eventually decided on the merits. Because Jones has not met the section 2255(h)(2) requirements, we cannot reach the merits of his vagueness argument. (And, because we do not reach the merits, we are not "continu[ing] the same path as we did before," as the dissenting opinion suggests.) But, reading the amicus brief, we cannot say, as the dissenting opinion does, that "there is simply no credible argument that the rule set forth in *Johnson* could spare" the three-strikes law's residual clause. Amicus counsel's arguments were credible and debatable enough that we denied the government's motion for summary reversal.

Turning away from *Hammoud*, Jones and the dissenting opinion cite three cases to show that his motion was based on a new constitutional rule and satisfied section 2255(h)(2): *Stringer v. Black*, 503 U.S. 222 (1992), *Tyler v. Cain*, 533 U.S. 656 (2001), and *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021). But each one is distinguishable.

The dissenting opinion points to *Stringer* as signifying that "not every extension of Supreme Court precedent to a new statute requires a new rule of constitutional law"—meaning we don't need a "new and separate rule" applying the principle from *Johnson* to the three-strikes law's residual clause. Jones, for his part, argues that *Stringer* shows that existing precedents, even if not themselves

announcing new rules, can combine to announce a new rule of constitutional law in a novel setting. Jones says that *Johnson*, *Dimaya*, and *Davis*, taken together, "set out a clear rule of unconstitutional vagueness in criminal residual clauses," and that "vagueness rule"—"like the vagueness rule in *Stringer*"—"transcends specific statutes." Because *Johnson* and its progeny, taken together, dictate by precedent a rule of unconstitutional vagueness applicable to the three-strikes law (a "similarly-worded provision in a different statute"), Jones contends, "[t]he Supreme Court d[id] not have to issue a fourth case naming [that statute] as unconstitutional."

We think *Stringer* doesn't apply as Jones or the dissenting opinion urge for four reasons. First, in *Stringer*, the Supreme Court reached the conclusion that it did *because* its existing precedents—*Clemons v. Mississippi*, 494 U.S. 1074 (1990) and *Maynard v. Cartwright*, 486 U.S. 356 (1988)—did not announce new rules of constitutional law. *See, e.g.*, *Stringer*, 503 U.S. at 228 ("First, it must be determined whether the decision relied upon announced a new rule. If the answer is yes . . . the decision is not available to the petitioner."); *id.* ("In the case now before us Mississippi does not argue that *Maynard* itself announced a new rule. To us this appears a wise concession."). But here, unlike in *Stringer*, the existing precedents that Jones relies on—*Johnson* and *Davis*—did announce new rules. *See Hammoud*, 931 F.3d at 1038 ("We conclude that *Davis*, like *Johnson* before it, announced a new substantive rule.").

Second, in *Stringer*, the Supreme Court applied its existing precedents    finding    statutory    aggravating    factors

unconstitutional—*Clemons* and *Maynard*—to a virtually identical statutory aggravating factor. But here, the existing precedents Jones relies on (*Dimaya* and *Davis*) did not find virtually identical statutes unconstitutional. *Dimaya* involved a statute defining elements for federal crimes and immigration violations, while *Davis* involved its own substantive federal offense. The three-strikes law, by contrast, is a sentence enhancement statute, establishing a mandatory minimum if the defendant had three qualifying convictions.

Third, in *Stringer*, the Supreme Court made clear that the existing precedents had to exist before the prisoner's conviction and sentence became final. *See id.* at 227 ("[A] case decided after a [prisoner's] conviction and sentence became final may not be the predicate for federal habeas corpus relief unless the decision was dictated by precedent *existing when the judgment in question became final*." (emphasis added)). But here, the existing precedents Jones relies on (*Johnson*, *Dimaya*, and *Davis*) were decided after Jones's conviction and sentence became final. *See In re Thomas*, 988 F.3d 783, 789 (4th Cir. 2021) (In determining whether a decision was dictated by precedent, "the Supreme Court mandates that we look to the precedent existing at the time [the prisoner's] conviction became final in 2011. And in 2011, neither *Johnson* nor *Dimaya* had been decided. So . . . [*Davis*] certainly was not dictated by precedent in 2011." (cleaned up)).

And fourth, we have already rejected the argument that the existing precedents in *Johnson* and *Dimaya* "transcend[]" their context and automatically announce new rules applicable to other

residual clauses. In *Hammoud*, we explained that the prisoner's "reliance on *Dimaya* and *Johnson* to support his [section] 924(c) challenge [was] misplaced" because "those cases involved 18 U.S.C. [section] 16(b) and the [Armed Career Criminal Act], respectively, not [section] 924(c)." 931 F.3d at 1036 n.1. Instead, the *Hammoud* prisoner's claim was "best described as a *Davis* claim." *Id.*

In other words, Jones and the dissenting opinion are wrong that a residual clause is a residual clause is a residual clause. Although the three-strikes law's residual clause is "similarly worded" to the residual clauses in *Johnson*, *Dimaya*, and *Davis*, we can't pluck the rules announced by those decisions and plop them onto Jones's challenge to a different statute in a different context. Our precedent expressly forbids doing that. So, we won't.

Jones's reliance on the decision in *Tyler* is even further off the mark. There, the Supreme Court addressed the question of retroactivity and said that "[m]ultiple cases can render a new rule retroactive . . . if the holdings in those cases necessarily dictate retroactivity of the new rule." *Tyler*, 533 U.S. at 666. But the jurisdictional problem for Jones isn't retroactivity. It's whether any Supreme Court decision has announced a new constitutional rule that applies to the three-strikes law's residual clause. Whether a new constitutional rule exists and, if so, whether it's retroactive are two different questions. *Tyler* doesn't help Jones as to the first question.

The last case Jones and the dissenting opinion rely on is our decision in *Granda*. The prisoner in *Granda* filed a second section 2255 motion challenging the use of his conviction for conspiracy to

commit Hobbs Act robbery as a predicate for his conviction for conspiracy to possess a firearm in furtherance of a crime of violence or drug-trafficking crime, in violation of 18 U.S.C. section 924(o). 990 F.3d at 1280.  Although we would now call this a *Davis* claim, the prisoner filed his motion before *Davis*, and "we gave [him] leave to file a *Johnson* challenge."  *Id.* at 1282–83.

We concluded in *Granda* that the district court had jurisdiction over the prisoner's motion.  *Id.* at 1283.  We recognized that "a *Johnson* claim is distinct from a *Davis* claim for purposes of the rule against filing repeat petitions raising claims that had been previously rejected" and noted that we had only authorized the prisoner to file a *Johnson* claim.  *Id.*  But this did not divest the district court of jurisdiction, we said, because "to resolve the *Johnson* claim we did authorize, we can, indeed we must, apply the controlling Supreme Court law of *Davis*."  *Id.*  We explained that

> *Davis* extended the reasoning of *Johnson*, providing us with the answer to a question central to [the prisoner's] petition:  whether the [section] 924(c)(3)(B) residual clause is unconstitutionally vague.  Applying *Davis* to resolve [the prisoner's] vagueness claim does not transform the authorized claim—which originally relied on *Johnson*—into a distinct, unauthorized *Davis* claim.

*Id.* at 1283–84.

*Granda* shows that where we have authorized a *Johnson* claim and the prisoner has really raised a *Davis* claim, the district court has jurisdiction to decide the *Davis* claim the prisoner has

brought. Thus, if the Supreme Court had decided, while Jones's petition was pending, that the three-strikes law's residual clause was unconstitutionally vague, *Granda* would solve Jones's jurisdictional problem. We would be able to say that this new Supreme Court case "extended the reasoning of *Johnson*" and "provid[ed] us with the answer to a question central to [Jones]'s petition: whether the [three-strikes law's] residual clause is unconstitutionally vague." *See id.* at 1283–84. But that case does not exist; the Supreme Court has not yet answered the "question central" to Jones's petition. *See id.* at 1283. And that, in turn, means there is no new rule of constitutional law from the Supreme Court allowing for Jones's second section 2255 motion.

### The Dissenting Opinion

Before concluding, we briefly respond to two parts of the dissenting opinion. First, the dissenting opinion reaches the conclusion that it does because it reads the new rule in *Johnson* as: "defendants have the right not to be sentenced under an unpredictable and arbitrary residual clause." But this is not the new rule in *Johnson*.

The "new rule of constitutional law announced in *Johnson*" was "that the definition of violent felony in the residual clause of the Armed Career Criminal Act [wa]s unconstitutionally vague." *In re Burgest*, 829 F.3d 1285, 1286 (11th Cir. 2016) (citations omitted). We've described it that way at least a half dozen times. *See, e.g.*, *In re Watt*, 829 F.3d 1287, 1289 (11th Cir. 2016) (describing the "new rule of constitutional law" as "the definition of violent felony

in the residual clause of the Armed Career Criminal Act is uncon-stitutionally vague" (citations omitted)); *Burgest*, 829 F.3d at 1286; *In re Williams*, 826 F.3d 1351, 1353 (11th Cir. 2016) (describing the "new rule of constitutional law" in *Johnson* as "that the residual clause of the violent felony definition in the Armed Career Crimi-nal Act . . . is unconstitutionally vague and that imposing an in-creased sentence under that provision . . . violates due process" (ci-tation omitted)); *In re Colon*, 826 F.3d 1301, 1302 (11th Cir. 2016 (de-scribing the "new rule of constitutional law" in *Johnson* as "the re-sidual clause of the Armed Career Criminal Act . . . is unconstitu-tionally vague" (citations omitted)); *Anderson*, 829 F.3d at 1291 (de-scribing the "new rule of constitutional law announced in *Johnson*" as "the residual clause of the Armed Career Criminal Act is uncon-stitutionally vague" (citations omitted)); *In re Fleur*, 824 F.3d 1337, 1338 (11th Cir. 2016) (describing the "new rule of constitutional law" in *Johnson* as "the residual clause of the Armed Career Crimi-nal Act is unconstitutionally vague" (citations omitted)).

If the dissenting opinion's broad framing of *Johnson*'s new rule were right, then we would have allowed the *Griffin* and *Ander-son* prisoners to file successive section 2255 motions challenging the almost-identical residual clause in the career offender guideline. But we didn't. We denied permission. And, if the dissenting opin-ion's framing of *Johnson*'s new rule were right, then we would have allowed the *Hammoud* prisoner to file a successive section 2255 mo-tion challenging the almost-identical residual clause in section 924(c). But we didn't. We denied the *Hammoud* prisoner's *Johnson*-based application. We denied them because the new rule in

*Johnson* was not so broad to cover all the other similarly-worded residual clauses, as the dissenting opinion claims.

Second, the dissenting opinion ends by noting that prisoners sentenced under the three-strikes law's residual clause "will be barred from vindicating their rights" because "the government has conceded that this residual clause is unconstitutional and, therefore, no longer seeks to apply it in criminal prosecutions." We don't agree. The dissenting opinion ignores cases on direct appeal that were in the pipeline before the government's confession of error.[7] It overlooks prisoners who have challenged the three-strikes law in an initial section 2255 motion—they, unlike prisoners filing successive motions, do not have to meet the jurisdictional requirements in section 2255(h)(2). *Compare, e.g.*, *In re Palacios*, 931 F.3d 1314, 1314–15 (11th Cir. 2019) (requiring section 2255(h) showing for second or successive motion to vacate prisoner's sentence), *with Seabrooks v. United States*, 32 F.4th 1375, 1382–83 (11th Cir. 2022) (explaining that initial motion to vacate prisoner's sentence isn't analyzed under section 2255(h)). And the dissenting opinion assumes that the government will never change its position on the three-strikes law. But the government's legal position is not

---

[7] If the government confesses error on direct appeal, as the dissenting opinion suggests, then we will consider the government's confession in deciding the merits of whether the three-strikes law's residual clause is unconstitutionally vague. But the point is that on direct appeal, unlike on a second section 2255 motion, we will have the opportunity and the jurisdiction to consider the merits of the government's confession.

written in stone.  It changes, sometimes from Administration to Administration.

Take the three-strikes law as an example.  From *Johnson* in 2015 until the government's letter to Congress in 2020, the government's position was that the three-strikes law's residual clause was not unconstitutionally vague.  In 2020, five years after *Johnson*, the government's position changed.  Even in this case, the government defended the application of the three-strikes law to Jones and only flipped its position on appeal.  There's no reason to believe the government will never flip again.

## CONCLUSION

We end, as we began, by highlighting how narrow today's decision is.  We have not decided whether the three-strikes law's residual clause is unconstitutionally vague.  And we have not decided whether Jones met his burden under *Beeman*.  Instead, our review is limited to the threshold question whether Jones has met the jurisdictional requirements of section 2255(h)(2).

The district court had jurisdiction to consider Jones's second section 2255 motion only if he could establish that a new constitutional rule supported his claim.  But no decision from the Supreme Court has announced the new rule that Jones needs.  The district court therefore "lack[ed] jurisdiction to decide whether [Jones's] motion ha[d] any merit."  *See Randolph*, 904 F.3d at 964.  We vacate the district court's denial of Jones's motion on the merits and remand for the dismissal of his motion.

**VACATED AND REMANDED.**

20-13365                WILSON, J., Dissenting                1

WILSON, Circuit Judge, Dissenting:

In 2015, the Supreme Court struck down the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), as unconstitutionally vague. *See Johnson v. United States*, 576 U.S. 591 (2015). Shortly thereafter, the Court held that *Johnson* applies retroactively to cases on collateral review. *See Welch v. United States*, 578 U.S. 120 (2016). A decade earlier, the defendant in this case, Charles Jones, was sentenced to life in prison under a similar residual clause in the federal three strikes law, 18 U.S.C. § 3559(c). By the time *Johnson* came down from the Supreme Court, Jones had long since exhausted his direct appeal and his initial habeas petition. So, in 2016, we authorized Jones to file a second or successive § 2255 motion to vacate his § 3559(c) enhancement. We certified that, in the wake of *Johnson* and *Welch*, Jones had made a prima facie showing that his motion contained "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by 28 U.S.C. § 2255(h)(2). The district court denied relief on the merits but granted a certificate of appealability.

The majority now holds that we lack jurisdiction to hear this appeal, finding that Jones's motion does not rely on the "new rule of constitutional law" established in *Johnson*. That is a view rejected by all the litigants in this case: the government, the defense, and court-appointed amicus. And what justification does the majority offer? Because Jones seeks to invalidate his enhanced sentenced imposed under the residual clause contained in § 3559(c)

rather than the ACCA's residual clause, the majority reasons that *Johnson* is no help to Jones.

That reasoning is flawed. The Supreme Court has made clear that "a case does *not* 'announce a new rule, [when] it [is] merely an application of the principle that governed' a prior decision to a different set of facts." *Chaidez v. United States*, 568 U.S. 342, 347–48 (2013) (quoting *Teague v. Lane*, 489 U.S. 288, 307 (1989)) (emphasis and alterations in original). Here, Jones is merely asking us to enforce the principle that governed *Johnson*: that defendants have the right not to be sentenced under an unpredictable and arbitrary residual clause. That principle applies to § 3559(c)'s residual clause, which is indistinguishable from the one at issue in *Johnson*. Therefore, I would hold that we have jurisdiction pursuant to § 2255(h)(2).

Viewing the rules of *Johnson* and *Dimaya*[1] and *Davis*[2] as specific only to the statutes they addressed is in essence holding that when the Supreme Court establishes a rule it can govern *only* that statute, and that applying the same principle to another statute necessarily requires a new and separate rule. But Supreme Court precedent shows otherwise. Consider, for example, the Supreme Court's decision in *Stringer v. Black*, 503 U.S. 222 (1992), in which the Court had to determine which of its prior decisions constituted a new rule of constitutional law. There, the Court noted that one

---

[1] *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

[2] *Davis v. United States*, 139 S. Ct. 2319 (2019).

20-13365               WILSON, J., Dissenting                    3

decision, *Godfrey v. Georgia*, 446 U.S. 420 (1980), had "invalidated a death sentence" that rested on a vaguely worded Georgia statute. *Stringer*, 503 U.S. at 228. Later, in *Maynard v. Cartwright*, 486 U.S. 356 (1988), the Court had "applied the same analysis and reasoning" to invalidate a similar Oklahoma statute. *Stringer*, 503 U.S. at 228. Yet, although *Maynard* extended *Godfrey* to a new statute, *it did not announce a new rule of constitutional law. See id.* at 228–29. The Court explained:

> *Godfrey* and *Maynard* did indeed involve somewhat different language. But it would be a mistake to conclude that the vagueness ruling of *Godfrey* was limited to the precise language before us in that case. In applying *Godfrey* to the language before us in *Maynard*, we did not "brea[k] new ground." *Maynard* was, therefore . . . controlled by *Godfrey*, and it did not announce a new rule.

*Id.* (alteration in the original). Thus, not every extension of Supreme Court precedent to a new statute requires a new rule of constitutional law. A rule is not "new" where it simply applies an existing rule in a way that would be obvious to reasonable jurists. *See Sawyer v. Smith*, 497 U.S. 227, 234 (1990).

The majority identifies two lines of this court's post-*Johnson* cases to support its analysis. The first line of cases relate to post-*Johnson* challenges to the career offender's residual clause. I understand the majority's use of those cases and I do not quibble with those cases especially in light of *United States v. Beckles*, 580 U.S. 256 (2017). In *Beckles*, the Supreme Court declined to extend *Johnson*

and void for vagueness challenges to sentencing guidelines. Specifically, the Court explained that void for vagueness applies to "laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses," and sentencing guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence with the statutory range." 580 U.S. at 262–63. This is reasonable and our line of cases that developed before *Beckles* understood that distinction the Supreme Court ultimately made.

But I think most of the majority's errors stem from its overreading on the second line of cases, most specifically *In re Hammoud*,[3] where we held that the Supreme Court announced a new rule of constitutional law when it extended *Johnson*'s reasoning to invalidate 18 U.S.C. § 924(c). 931 F.3d 1032, 1038 (11th Cir. 2019) (per curiam) (discussing *Davis v. United States*, 139 S. Ct. 2319 (2019)).

Our decision in *Hammoud* does not require a different result. To understand *Hammoud*, one must understand what preceded it. As the majority recounts, the Supreme Court struck down three separate residual clauses between 2015 and 2019.

The first to go was the ACCA's residual clause, which defines a violent felony as one that "involves conduct that presents a

---

[3] The majority faults the dissent for focusing on *Hammoud* when it cites a dozen cases post-*Johnson* to support its analysis. And there is no doubt that the majority does cite more cases than *Hammoud*, but in my view, the majority focuses extensively on *Hammoud* which I agree is an influential case in resolving this question.

serious potential risk of physical injury to another." *See* 18 U.S.C. § 924(e)(2)(B)(ii).   That clause was unconstitutionally vague because it required courts, using the categorical approach, "to picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction present[ed] a serious potential risk of physical injury." *Johnson*, 576 U.S. at 596.  Second, a few years later, the Court applied the same reasoning to strike down a similarly worded residual clause, 18 U.S.C. § 16(b).  *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018) ("*Johnson* is a straightforward decision, with equally straightforward application here. . . . *Johnson* effectively resolved the case now before us.").  Third, the Court went a step farther, striking down the residual clause in 18 U.S.C. § 924(c), which was at least arguably distinguishable from those at issue in *Johnson* and *Dimaya*.  *See Davis*, 139 S. Ct. at 2323–24. Whereas the residual clauses in *Johnson* and *Dimaya* required courts to look back at a defendant's *previous* convictions, the residual clause at issue in *Davis* involved *contemporaneous* predicate offenses. *Compare* § 924(e) (defining previous convictions for the purpose of a criminal-recidivist sentencing enhancement), *and* § 16(b) (defining previous convictions for purposes of determining removability in the immigration context), *with* § 924(c) (making it a separate offense for anyone to use, carry, or possess a firearm while committing a violent felony).

Prior to *Davis*, several circuits, including our own, found that distinction significant for the following reason.  For example, in *Ovalles v. United States*, we reasoned that the backward-looking nature of the residual clauses in the ACCA and § 16(b)

unquestionably required courts to apply the categorical approach, which contributed to the vagueness problem that infected those clauses. 905 F.3d 1231, 1248–49 (11th Cir. 2018) (en banc), *abrogated by Davis*, 139 S. Ct. 2319. In contrast, because § 924(c) "operate[d] entirely in the present," it arguably enabled courts to employ a conduct-based approach that focused on a defendant's real-world behavior, thus avoiding the vagueness issues that would otherwise render it unconstitutionally vague. *See id.* at 1249 (reasoning that "the look-back problem doesn't arise with respect to § 924(c), which serves an altogether different function from the statutes at issue in *Johnson* and *Dimaya* and operates differently in order to achieve that function"). As it turned out, the Supreme Court rejected that distinction, abrogating our *Ovalles* decision and settling a circuit split. *See Davis*, 139 S. Ct. at 2326 (comparing § 924(c)'s residual clause with those at issue in *Johnson* and *Dimaya* and finding "no material difference in the[ir] language or scope").

Against that backdrop came our decision in *Hammoud*. There, the movant had filed a habeas petition in 2018—after *Johnson* but before *Davis*—seeking to extend *Johnson*'s reasoning to § 924(c). We denied that petition on the merits, applying our decision in *Ovalles*, which was binding at the time. But once *Davis* overruled *Ovalles* in 2019, Hammoud filed a new petition, this time purporting to rely on a new rule of constitutional law as set forth in *Davis*. *See Hammoud*, 931 F.3d at 1036. The question before us then was whether to view *Davis* as a new rule of constitutional law. *Id.* at 1036–37.

We held that *Davis* was a new rule, rather than merely an application of *Johnson* and *Dimaya*, for two reasons. First, "it extended *Johnson* and *Dimaya* to a new statute and context." *Id.* at 1038. The Supreme Court's holding in *Davis*, we explained, "restricted for the first time the class of persons § 924(c) could punish and, thus, the government's ability to impose punishments on defendants under that statute." *Id.* Second, we observed that "the Supreme Court's grant of *certiorari* in *Davis* to resolve the circuit split on whether § 924(c)(3)(B) was unconstitutionally vague illustrates that the rule in *Davis* was not necessarily 'dictated by precedent,' . . . or 'apparent to all reasonable jurists[.]'" *Id.* (citing *Stringer*, 503 U.S. at 228; *Lambrix v. Singletary*, 520 U.S. 518, 527–28 (1997)).

To begin, *Hammoud* decided an entirely different question than the one before us. And it is axiomatic that "a judicial decision is inherently limited to the facts of the case then before the court and the questions presented to the court in the light of those facts." *United States v. Johnson*, 921 F.3d 991, 1003 (11th Cir. 2019) (en banc) (alterations adopted). On the circumstances presented in *Hammoud* we sensibly concluded that a movant seeking to invalidate his § 924(c) conviction post-*Davis* of course proceeds under *Davis* rather than *Johnson* or *Dimaya*. The majority focuses on the fact that *Hammoud* held *Davis* was a "new substantive rule," *Hammoud*, 931 F.3d at 1038, distinct from *Johnson* and *Dimaya*. Maj. Op. at 27–28. The majority notes that *Hammoud* called reliance on the *Johnson* and *Dimaya* lines of cases "misplaced" in the § 924(c) context. Maj. Op. at 28 (citing *Hammoud*, 931 F.3d at 1036 n.1). But neither of

8                    Wilson, J., Dissenting                20-14539

these facts says anything about whether the *Johnson* rule applies to other statutes. Notwithstanding that *Davis* announced a "new" rule, the question in this case is whether the *Johnson* rule applies to statutes such as § 3559(c).

But even taking *Hammoud* for all its persuasive worth, its reasoning is distinguishable. To be sure, the *Hammoud* panel found it significant that *Davis* extended *Johnson* to a new *statute*. *Hammoud*, 931 F.3d at 1038. Critically, however, the *Hammoud* panel also noted that *Davis* extended *Johnson* to a new *context* (i.e., a non-recidivist statute).[4] *Id.* Jones seeks to apply *Johnson* to a new statute, but he does not seek to apply it in a new context. Section 3559(c), like the ACCA, is a recidivist statute requiring courts to look back and assess a defendant's previous convictions. It thus operates in the same context as the rule announced in *Johnson*.

Relatedly, we emphasized in *Hammoud* that *Davis* was not necessarily "dictated by precedent," as it resolved an issue that had produced a circuit split and generated disagreement among reasonable jurists—none of which is true here. *Id.* Recall that the debate surrounding *Johnson*'s applicability to § 924(c)—which the Court

---

[4] The majority responds that § 924(c) contains certain recidivist provisions, citing to *United States v. O'Brien*, 560 U.S. 218 (2010) and *Castillo v. United States*, 530 U.S. 120 (2000). However, the majority's emphasis is misplaced. First, both cases dealt with § 924(c) in its creation of either offense elements or sentencing factors, where a consideration of an offender's characteristics—including recidivism—tips the scale toward the latter. Second, and importantly, whether § 924(c) contains certain recidivist provisions does not negate the fact that the statute is non-recidivist as a whole.

20-13365                  WILSON, J., Dissenting                    9

addressed in *Davis*—hinged entirely on the premise that § 924(c) might not require the categorical approach. *See Davis*, 139 S. Ct at 2327; *see also Ovalles*, 905 F.3d at 1239–40 (reasoning that "if we are required to apply the categorical approach in interpreting § 924(c)(3)'s residual clause— . . . as the Supreme Court did in voiding the residual clauses before it in *Johnson* and *Dimaya*—then the provision is done for"). Everyone agreed that "the categorical approach dooms § 924(c)(3)'s residual clause, while a conduct-based interpretation salvages it." *Ovalles*, 905 F.3d at 1240. Here, there is no doubt that the categorical approach applies, and, thus, there can be no real contention that § 3559(c) should survive. Reasonable jurists could—and did—debate whether *Johnson* dictated the demise of § 924(c) (a non-recidivist statute), but there is simply no credible argument that the rule set forth in *Johnson* could spare § 3559(c) (a recidivist statute).[5] *See Sawyer*, 497 U.S. at 234.

      To put a finer point on this, § 3559(c) is not materially different from the statutes at issue in *Johnson, Dimaya*, and *Davis*. Section 3559(c) states "the term 'serious violent felony' means . . . any other offense punishable by a maximum term of imprisonment of

---

[5] In the wake of *Davis*, the government has recognized as much, "reluctantly determin[ing] that *no reasonable basis* exists to distinguish the substantial-risk clause in § 3559(c)(2)(F)(ii) from the provision the Supreme Court found to be unconstitutionally vague in [*United States v. Davis*, 139 S. Ct. 2319 (2019)]." *See* Department of Justice, Letter from Acting Solicitor General Wall to the Honorable Jerrold Nadler, Committee Chairman on the U.S. House of Representatives Judiciary Committee (Sept. 28, 2020) (emphasis added). Accordingly, the government moved for summary reversal in this appeal. We denied that motion and appointed counsel to defend the district court's judgment.

10 years or more . . . that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." Now compare Section 3559(c) with the statutes from *Johnson, Dimaya*, and *Davis*—they are indistinguishable.

| *Davis* (18 U.S.C. § 924(c)) | "For purposes of this subsection the term 'crime of violence' means an offense that is a felony and— . . . that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." |
|---|---|
| *Dimaya* (18 U.S.C. § 16(b)) | "The term 'crime of violence' means— . . . any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." |
| *Johnson* (18 U.S.C. § 924(e)) | "[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that— . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." |

20-13365                WILSON, J., Dissenting                11

These residual clauses at issue require sentencing judges to ask an arbitrary and indeterminate question about the risk of physical force. That sort of inquiry is so unpredictable that it does not put defendants on notice of what conduct the statute criminalizes. Because on several occasions the Supreme Court has found similar language to be unconstitutionally vague, the same should follow here.[6]

To summarize, it follows necessarily from the new rule of constitutional law articulated in *Johnson* that § 3559(c)'s residual clause, which uses materially similar language to the ACCA's residual clause and operates in the same context, suffers from the same fatal defect. The applicability of *Johnson* to § 924(c), a non-recidivist statute, was a closer question. *See Hammoud*, 931 F.3d at 1038. In that context, it was less obvious that the categorical approach would apply and therefore less obvious that *Johnson*'s reasoning would carry the day. Accordingly, I see nothing contradictory in viewing *Davis* as a new rule of constitutional law, as we did in *Hammoud*, while viewing Jones's motion as proceeding within the scope of *Johnson*.

Indeed, our decision in *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), shows that we are not divested of jurisdiction

---

[6] We have been down this road before in narrowly construing Supreme Court precedents on this topic before being reversed by the Supreme Court. *See Ovalles v. United States*, 905 F.3d 1231 (11th Cir. 2018) (en banc), *abrogated by Davis*, 139 S. Ct. 2319. Despite knowing this, we continue the same path as we did before.

simply because the petitioner relies on *Johnson* to challenge the three-strikes provision in § 3559(c) rather than the ACCA. *Id.* at 1283. In *Granda*, we authorized the petitioner to file a successive habeas petition after *Johnson*. *Id.* But by the time the petitioner's case reached us on appeal, the Supreme Court decided *Davis* and this court decided *Hammoud*. *Id.* at 1283–84. This presented a question of our jurisdiction: because we had authorized a *Johnson* claim but not a *Davis* claim, we would have lacked jurisdiction if we viewed the petition as asserting a *Davis* claim. *See Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003) (per curiam) ("Without authorization, the district court lacks jurisdiction to consider a second or successive petition."). However, we held that "[a]pplying *Davis* to resolve [petitioner's] vagueness claim does not transform the authorized claim—which originally relied on *Johnson*—into a distinct, unauthorized *Davis* claim." *Granda*, 990 F.3d at 1284. Thus, in *Granda*, we held that we had jurisdiction to consider a challenge to a non-ACCA conviction even though the petitioner proceeded under *Johnson*.

On the jurisdictional question, I can see no difference between that situation and the situation presented in this case. Jones was authorized by this court to bring a *Johnson* claim, and he challenges his life-sentence under § 3559—a non-ACCA statute—on vagueness grounds. If *Hammoud*'s ruling did not divest this court

20-13365                WILSON, J., Dissenting                13

of jurisdiction to consider the *Granda* petitioner's claim, it does not divest this court of jurisdiction to hear Jones's claim.[7]

★    ★    ★

The majority's holding that we lack jurisdiction to hear this appeal is alarming. If the majority's view is correct, then despite the Supreme Court's clear guidance in three recent decisions that residual clauses of this sort are unconstitutional—and despite the Court's holding that these decisions should apply retroactively—prisoners like Jones will be barred from vindicating their rights.[8] And it is small comfort to suggest that such prisoners wait for us to strike down § 3559(c)'s residual clause on plenary appeal. Such an occasion will not arise since the government has conceded that this residual clause is unconstitutional and, therefore, no longer seeks

---

[7] The majority responds that: *"Granda* shows that where we have authorized a *Johnson* claim and the prisoner has really raised a *Davis* claim, the district court has jurisdiction to consider the *Davis* claim the prisoner has brought." Maj. Op. at 36. Respectfully, this is not what *Granda* says. Again, we held that the intervening decision in *Davis* "does *not* transform" the *Johnson* claim into a *Davis* claim. *Granda*, 990 F.3d at 1284 (emphasis added). In *Granda*, the only claim we authorized was a *Johnson* claim, and so it was that claim that gave us jurisdiction.

[8] The majority also faults the dissent for ignoring cases on direct appeal or on the initial § 2255 motions. But the majority is relying only on speculation that there are cases in those postures addressing this issue. Further, if the government confesses error in successive petitions—as it did here—there is no reason to suspect the government won't confess error in cases on direct appeal or initial § 2255 motions as well. And if no court goes against those concessions, those will be unfruitful challenges as well.

14                    Wilson, J., Dissenting                    20-14539

to apply it in criminal prosecutions.  The majority thus leaves Jones and others like him to serve out unconstitutional sentences.  Because our precedents do not require this injustice, I respectfully dissent.